464 So.2d 128 (1985)
DIVISION OF PARI-MUTUEL WAGERING, DEPARTMENT OF BUSINESS REGULATION, a State Agency, and Robert M. Smith, Director of the Division of Pari-Mutuel Wagering, and Gary Rutledge, Secretary of the Department of Business Regulation, Appellants,
v.
FLORIDA HORSE COUNCIL, INC., Calder Race Course, Inc., Tropical Park Inc., Gulfstream Park Racing Association, Inc., Hialeah, Inc., Tampa Bay Downs, Inc., and Tourist Attractions, Inc., Appellees.
No. 65820.
Supreme Court of Florida.
January 24, 1985.
Rehearing Denied March 15, 1985.
*129 Jim Smith, Atty. Gen., Louis F. Hubener, Asst. Atty. Gen., and Mitchell D. Franks, Chief Trial Counsel, Tallahassee, for appellants.
Wilbur E. Brewton and J. Riley Davis, Taylor, Brion, Buker & Greene, Tallahassee, for appellees.
ADKINS, Justice.
This cause is before the Court on appeal from a judgment entered by the Circuit Court of the Eleventh Judicial Circuit, sitting in Dade County. An appeal of the judgment was taken to the Third District Court of Appeal and that court has certified the case as requiring immediate resolution and has certified the following question as being of great public importance:
Whether sporting activities involving pari-mutuel wagering may be prohibited on Sunday.
We have jurisdiction pursuant to article V, section 3(b)(5), Florida Constitution. We find that sporting activities involving pari-mutuel wagering may be prohibited on Sunday and, therefore, answer the certified question in the affirmative.
Appellees, race track permit holders who conduct horseracing at various tracks in Florida, filed their complaint in this action in the circuit court, Dade County, Florida, in December, 1983. They sought to have declared unconstitutional those provisions in chapter 550, Florida Statutes (1981), which prohibit horseracing and pari-mutuel gambling on Sunday.
On July 26, 1984, the circuit court entered a summary judgment in favor of appellees ruling that the provisions of chapter 550 that ban the conduct of pari-mutuel wagering on Sundays were unconstitutional.
Appellants timely filed a notice of appeal. The Third District Court of Appeal certified the case to be of great public importance and to require immediate resolution by this Court. We accepted jurisdiction of the case on September 10, 1984.
A study of the early American Sunday closing laws will reveal that they originated from and were founded upon religious principles and beliefs. The original purpose of these laws was to protect the Christian Sabbath pursuant to the Biblical command to "Remember the Sabbath Day to Keep it Holy." Exodus 31:14.
In Illinois ex rel. McCollum v. Board of Education, 333 U.S. 203, 68 S.Ct. 461, 92 L.Ed. 649 (1948), and Everson v. Board of Education, 330 U.S. 1, 67 S.Ct. 504, 91 L.Ed. 711 (1946), the United States Supreme Court held that the fourteenth amendment protected the individual against any state statute which infringed upon his individual convictions or beliefs. Thus, it was inevitable that Sunday closing legislation in our country would be subject to constitutional attack.
*130 A further examination of the judicial history of these laws in the state of Florida will reveal that they will not be upheld upon any religious principle, tenet, belief or admonition because of our constitutional provisions requiring the complete separation of church and state. Art. I, § 3, Fla. Const.; Henderson v. Antonacci, 62 So.2d 5 (Fla. 1952). Case law dictates that if such laws are to pass constitutional scrutiny, they must be upheld as a valid exercise of the state's police power and must be rationally related to a legitimate state purpose. 62 So.2d at 8. More specifically, the Sunday closing laws must bear a rational relationship to the public health, safety, morals, or general welfare of our citizenry. Id.
Appellant contends that the laws prohibiting Sunday sporting activities involving pari-mutuel wagering are rationally related to a legitimate state purpose and are therefore constitutionally sound. We agree.
This Court long ago recognized the intrinsically problematic character of gambling and horse racing and the state's right to strictly control it.
Authorized gambling is a matter over which the state may exercise its police power in a more arbitrary manner because of the noxious qualities of the enterprise as distinguished from those enterprises not affected with a public interest and those enterprises over which the exercise of the police power is not so essential for the public welfare.
Hialeah Race Course, Inc. v. Gulf Stream Park Racing Association, 37 So.2d 692 (Fla. 1948), appeal dismissed, 336 U.S. 948, 69 S.Ct. 885, 93 L.Ed. 1104 (1949). This language was reiterated a year later in Rodriguez v. Jones, 64 So.2d 278 (Fla. 1953). In both Hialeah and Rodriguez the Court noted that gambling is inherently dangerous to society and for that reason may be lawfully prohibited. In 1978, this Court recognized once again that it is within the police power of the state to enact laws to suppress gambling. Schultz v. State, 361 So.2d 416 (Fla. 1978). Thus, it is well established that the legislature has broad discretion in regulating and controlling pari-mutuel wagering and gambling under its police powers. In the instant case, it would seem that the legislature could reasonably find that the Sunday racing and betting restrictions serve several legitimate state purposes which promote the public health, safety, morals, and general welfare of the citizens of the state of Florida. The restrictions serve these legitimate purposes: 1) they encourage people to spend their weekend leisure time at nongambling, presumably more healthy recreational pursuits and other activities; 2) closing such facilities on what might otherwise be the busiest day of the week could help curb the compulsive gambler syndrome; and 3) racing on less busy days means there is less opportunity for mischief that sometimes attends these events, and therefore a lighter burden on law enforcement authorities is created. Thus, we find that the statutes in question do serve legitimate state purposes. In McGowan v. Maryland, 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961), the United States Supreme Court ruled that not only do states have the power to enact laws setting aside a uniform day of rest, but also they have the power and authority to fix the day, and that day may be Sunday. The mere fact that the state of Florida has no uniform day of rest for other businesses does not preclude the legislature from having a day of rest and surcease from racing and pari-mutuel wagering. In McGowan, the Maryland law under review required numerous businesses to close on Sunday but also provided many exceptions to that law. As to the argument that this constituted unlawful discrimination, the Court stated:
[T]he Fourteenth Amendment permits the States a wide scope of discretion in enacting laws which affect some groups of citizens differently than others. The constitutional safeguard is offended only if the classification rests on grounds wholly irrelevant to the achievement of the State's objective. State legislatures are presumed to have acted within their constitutional power despite the fact *131 that, in practice, their laws result in some inequality. A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it.
366 U.S. at 425-26, 81 S.Ct. at 1104-05 (citations and footnote omitted). The Supreme Court did not require the existence of a pervasive scheme of Sunday closing in order to justify any closing requirement. Rather, the test is whether the law "is wholly irrelevant to the achievement of the state's objective. Id. Moreover, this Court has held that classifications under the police power will not be judicially annulled unless wholly without a rational basis. Hamilton v. State, 366 So.2d 8 (Fla. 1978).
In Rodriguez v. Jones, 64 So.2d 278 (Fla. 1953), this Court found that treating jai alai frontons as a distinct class was appropriate because the restriction at issue applied equally to all frontons "similarly circumstanced." Chapters 550 and 551, Florida Statutes, uniformly require all sporting activities involving pari-mutuel gambling to cease operation on Sunday. Those activities include thoroughbred racing, harness racing, quarterhorse racing, dog racing and jai alai. Under the statutes in question, all pari-mutuel facilities appear to be "similarly circumstanced." The record in the instant case is barren of any indication to the contrary.
Thus, we find that the closing requirement in question does not constitute unlawful discrimination and is therefore rationally related to the aforementioned legitimate state purposes. The legislature has the discretion to designate a day of surcease from sporting activities involving pari-mutuel wagering and to specify the day, and that day may be Sunday.
Accordingly, the decision of the trial court is reversed.
It is so ordered.
BOYD, C.J., and OVERTON, ALDERMAN, McDONALD, EHRLICH and SHAW, JJ., concur.