71 So.3d 226 (2011)
FLORIDA GAMING CENTERS, INC., a Florida Corporation; and West Flagler Associates, Ltd., a Florida Limited Partnership, Appellants,
v.
FLORIDA DEPARTMENT OF BUSINESS AND PROFESSIONAL REGULATION, an agency of the State of Florida, and South Florida Racing Association, LLC, a Florida Limited Liability Company, and Florida Pinball and Amusement, Inc., Appellees.
Calder Race Course Inc., a Florida Corporation, Appellant,
v.
Florida Department of Business and Professional Regulation, Division of Pari-Mutuel Wagering, an agency of the State of Florida; and South Florida Racing Association, LLC, a Florida Limited Liability Company, and Florida Pinball and Amusement, Inc., Appellees.
Nos. 1D10-6780, 1D11-0130.
District Court of Appeal of Florida, First District.
October 6, 2011.
*227 John M. Lockwood of Gunster, Yoakley & Stewart, P.A., Tallahassee, Michael S. Olin of Michael S. Olin, P.A., Miami, and Joel S. Perwin of Joel S. Perwin, P.A., Miami, for Appellants Florida Gaming Centers and West Flagler Associates in Case No. 1D10-6780.
Wilbur E. Brewton of Brewton Plante, P.A., Tallahassee, and Bruce S. Rogow and Cynthia E. Gunther of Bruce S. Rogow, P.A., Fort Lauderdale, for Appellant Calder Race Course, Inc. in Case No. 1D11-0130.
Garnett W. Chisenhall, Chief Appellate Counsel, Department of Business & Professional Regulation, Tallahassee, for Appellee The Department of Business and Professional Regulation.
Andrew T. Lavin of Navon & Lavin, P.A., Ft. Lauderdale, and Raoul G. Cantero, Rachel Wagner Furst, and John-Paul Rodriguez of White & Case LLP, Miami, for Appellee South Florida Racing Association, LLC.
David S. Romanik of David S. Romanik, P. A., Oxford, and Marc W. Dunbar and Daniel R. Russell of Pennington, Moore, Wilkinson, Bell & Dunbar, P.A., Tallahassee, for Appellee Florida Pinball and Amusement, Inc., in Case No. 10-6780.
DAVIS, J.
Appellants, Florida Gaming Centers, Inc. ("Florida Gaming"), West Flagler Associates, Ltd. ("West Flagler"), and Calder Race Course Inc. ("Calder"), appeal final judgments entered in favor of Appellees, the Florida Department of Business and Professional Regulation ("Department") and South Florida Racing Association, LLC ("South Florida Racing"). Appellants contend that the trial court erred in concluding that the Legislature's 2009 amendment to section 551.102(4), Florida Statutes, which expanded the scope of the entities authorized to conduct slot machine gaming in Florida, is constitutional because, they contend, it conflicts with Article X, section 23 of the Florida Constitution, which authorized slot machine gaming in Miami-Dade and Broward Counties if approved by county-wide referendum. Because we agree with the trial court that the statutory amendment is constitutional, we affirm.
On November 2, 2004, Florida voters approved a ballot initiative, adding Article X, section 23 to the Florida Constitution. It provides in part:
(a) After voter approval of this constitutional amendment, the governing bodies of Miami-Dade and Broward Counties each may hold a county-wide referendum in their respective counties on whether to authorize slot machines within existing, licensed pari-mutuel facilities (thoroughbred and harness racing, greyhound racing, and jai-alai) that have conducted live racing or games in that county during each of the last two calendar years before the effective date of this amendment. If the voters of such county approve the referendum question by majority vote, slot machines shall be authorized in such pari-mutuel facilities. If the voters of such county by majority vote disapprove the referendum question, slot machines shall not be so authorized, and the question shall not be presented in another referendum in that county for at least two years.
(b) In the next regular Legislative session occurring after voter approval of this constitutional amendment, the Legislature shall adopt legislation implementing this section and having an effective date no later than July 1 of the year following voter approval of this amendment. Such legislation shall authorize agency rules for implementation, and may include provisions for the licensure and regulation of slot machines. The *228 Legislature may tax slot machine revenues, and any such taxes must supplement public education funding statewide.
In 2005, voters in Broward County approved slot machines pursuant to a county-wide referendum. That same year, the Legislature enacted chapter 551, Florida Statutes. Section 551.101, entitled "Slot machine gaming authorized," mirrored the language of Article X, section 23. The Legislature defined "eligible facility" as:
any licensed pari-mutuel facility located in Miami-Dade County or Broward County existing at the time of adoption of s. 23, Art. X of the State Constitution that has conducted live racing or games during calendar years 2002 and 2003 and has been approved by a majority of voters in a countywide referendum to have slot machines at such facility in the respective county.
§ 551.102(4), Fla. Stat. (2005). In 2008, voters in Miami-Dade County approved slot machines pursuant to a county-wide referendum.
In 2009, the Legislature amended the definition of "eligible facility" to include not only the facilities included in the original statute but also:
any licensed pari-mutuel facility located within a county as defined in s. 125.011, provided such facility has conducted live racing for 2 consecutive calendar years immediately preceding its application for a slot machine license, pays the required license fee, and meets the other requirements of this chapter; or any licensed pari-mutuel facility in any other county in which a majority of voters have approved slot machines at such facilities in a countywide referendum held pursuant to a statutory or constitutional authorization after the effective date of this section in the respective county, provided such facility has conducted a full schedule of live racing for 2 consecutive calendar years immediately preceding its application for a slot machine license, pays the required licensed fee, and meets the other requirements of this chapter.
Ch. 09-170, § 19, Laws of Fla. This amendment became effective on July 1, 2010.
In June 2010, Appellants, holders of pari-mutuel wagering permits in Miami-Dade County, filed suit against Appellees, seeking a declaratory judgment that the statutory amendment was unconstitutional because it conflicted with Article X, section 23, which, according to Appellants, served as a limitation on permissible slot machine gaming in the state. The trial court subsequently consolidated Appellants' cases and granted Appellee Florida Pinball and Amusement Association's motion to intervene. Appellants moved for summary judgment, and Appellee South Florida Racing filed a cross-motion for summary judgment. Deciding that the statutory amendment was constitutional, the trial court denied Appellants' motion and granted South Florida Racing's motion. The court reasoned that nothing in Article X, section 23 impinged upon the Legislature's ability to regulate gambling in Florida. These appeals followed.
The constitutionality of a statute is a question of law subject to de novo review. Crist v. Ervin, 56 So.3d 745, 747 (Fla.2010). All statutes are presumed to be constitutional, and the party challenging the constitutionality of a statute bears the burden of demonstrating that it is invalid. Chicago Title Ins. Co. v. Butler, 770 So.2d 1210, 1214 (Fla.2000). In analyzing the issue before us, Article X, section 23 must be construed in such a manner so as to fulfill the intent of the people. Caribbean Conservation Corp. v. Fla. Fish & Wildlife Conservation Comm'n, 838 So.2d 492, 501 (Fla.2003).
As the trial court did, we reject Appellants' contention that the purpose of *229 Article X, section 23 was to limit slot machine gaming in Florida to certain facilities in Miami-Dade and Broward Counties. The Legislature has broad discretion in regulating and controlling pari-mutuel wagering and gambling under its police powers. See Div. of Pari-Mutuel Wagering Dep't of Bus. Regulation v. Fla. Horse Council, Inc., 464 So.2d 128, 130 (Fla. 1985). In fact, chapter 849, Florida Statutes, prohibits many forms of gambling, including slot machines. See § 849.15(1)(a), Fla. Stat. (providing in part that it is unlawful to permit the operation of any slot machine in the state). As such, the only thing that Article X, section 23 limited was the Legislature's authority to prohibit slot machine gaming in certain facilities in the two counties. See Browning v. Fla. Hometown Democracy, Inc., PAC, 29 So.3d 1053, 1079 (Fla.2010) ("`The legislative branch looks to the [Florida] Constitution not for sources of power but for limitations upon power.'") (Citation omitted). Contrary to Appellants' position, Article X, section 23 provides no indication that Florida voters intended to forever prohibit the Legislature from exercising its authority to expand slot machine gaming beyond those facilities in Miami-Dade and Broward Counties meeting the specified criteria. Nor is there any indication that Florida voters intended to grant the seven entities who met the criteria a constitutionally-protected monopoly over slot machine gaming in the state. The trial court was, therefore, correct in concluding that the statutory amendment does not conflict with Article X, section 23 and is constitutional.
Accordingly, we AFFIRM.
VAN NORTWICK and CLARK, JJ., concur.