650 So.2d 1 (1994)
STATE of Florida, Appellant,
v.
The CITY OF PORT ORANGE, Florida, a political subdivision of the State of Florida, Appellee.
No. 83103.
Supreme Court of Florida.
November 3, 1994.
Rehearing Denied February 17, 1995.
Robert A. Butterworth, Atty. Gen., Joseph C. Mellichamp, III, Sr. Asst. Atty. Gen., and Eric J. Taylor, Asst. Atty. Gen., Tallahassee, for appellants.
Peter L. Dame of Squire, Sanders & Dempsey, Jacksonville, and Maureen S. Sikora, City Atty., City of Port Orange, Port Orange, for appellee.
*2 David J. Russ, Asst. Gen. Counsel, Dept. of Community Affairs, Tallahassee, amicus curiae for Florida Dept. of Community Affairs.
Roy K. Payne, Asst. City Atty., Orlando, amicus curiae for City of Orlando.
Kraig A. Conn, Asst. Gen. Counsel, Florida League of Cities, Inc., Tallahassee, amicus curiae for The Florida League of Cities, Inc.
Susan H. Churuti, Pinellas County Atty., President and C. Allen Watts of Cobb, Cole & Bell, Daytona Beach, amicus curiae for The Florida Ass'n of County Attys., Inc.
Paul R. Gougelman of Reinman, Harrell, Graham, Mitchell & Wattwood, P.A., Melbourne, amicus curiae for The Florida Bar, by and through its Local Government Law Section.
George H. Nickerson, Jr., Robert L. Nabors and Rani T. Partridge of Nabors, Giblin & Nickerson, P.A., Tallahassee, and Stephen E. Demarsh, Asst. County Atty., Sarasota, amicus curiae for Sarasota County.
Stanley James Brainerd, Gen. Counsel, Florida Chamber of Commerce, Tallahassee, amicus curiae for Florida Chamber of Commerce.
WELLS, Justice.
We have on appeal a decision of the trial court declaring that a proposed bond issue is valid. We have jurisdiction. Art. V, § 3(b)(2), Fla. Const.
Judicial inquiry in bond validation proceedings is limited. Specifically, courts should: (1) determine if a public body has the authority to issue the subject bonds; (2) determine if the purpose of the obligation is legal; and (3) ensure that the authorization of the obligation complies with the requirements of law. Taylor v. Lee County, 498 So.2d 424, 425 (Fla. 1986) (citing Wohl v. State, 480 So.2d 639 (Fla. 1985)).
The City of Port Orange (the City) enacted a "Transportation Utility Ordinance," City of Port Orange Ordinance No. 1992-11, creating a "Transportation Utility" of the City and adopting a "transportation utility fee" relating to the use of city roads. The fee is imposed upon the owners and occupants of developed properties within the City. No fees are imposed on undeveloped property. Any unpaid fee becomes a lien upon the property until such fee is paid. The costs to be defrayed by the fee are the City's expenses relating to the operation, maintenance, and improvement of the local road system. The circuit court limited these costs to capital projects.
The ordinance requires that city-maintained roads be classified as arterial, collector, or local roads, and the cost of constructing and maintaining such roads be allocated separately. Because arterial and collector roads provide mobility and facilitate traffic movement to and from all properties, the ordinance requires that costs incurred by the City on those roads be allocated to all developed properties within the city.
The function of local roads, it was determined, is to provide access to abutting properties. The ordinance requires the City to allocate costs incurred on local roads to developed properties fronting those roads. None of the costs of local roads are allocated to properties fronting private subdivision roads.
The City is required by the ordinance to estimate the amount of usage of the local roads by the owners and occupiers of developed properties through a mixture of actual traffic counts and the use of a "Trip Generation Manual" developed by the Institute of Traffic Engineers. The City allocates the costs for each class of roads to the users of that class of road in proportion to the number of trips generated by each user.[1] The *3 ordinance states that the fees collected from any property need not be in close proximity to such property or provide a special benefit to such property that is different in type or degree from benefits provided to the community as a whole.
The City further authorized the issuance of Transportation Utility Bonds, City of Port Orange Ordinance No. 1992-28, to finance the costs of constructing, renovating, expanding, and improving certain city transportation facilities. Such bonds are to be paid by a pledge of the transportation utility fees.
Subsumed within the inquiry as to whether the public body has the authority to issue the subject bond is the legality of the financing agreement upon which the bond is secured. GRW Corp. v. Department of Corrections, 642 So.2d 718 (Fla. 1994). Integral to the financing agreement here under review is the pledge of what the bond ordinance labels "transportation utility fees." Thus, we must determine whether the pledge of the transportation utility fees is a pledge of tax revenue or is a pledge of user charges or fees. Because a tax must be authorized by general law, the City agrees that if the transportation utility fee is a tax, even broad home rule powers granted to municipalities do not authorize it.
The circuit court ruled that the transportation utility fee is a valid user fee, not a tax, and the City is authorized under municipal home rule powers to impose and collect the fee. We do not agree. We reverse the decision of the circuit court. We hold that what is designated in the bond ordinance as a transportation utility fee is a tax which must be authorized by general law.
This Court has held that taxation by a city must be expressly authorized either by the Florida Constitution or grant of the Florida Legislature. "Doubt as to the powers sought to be exercised must be resolved against the municipality and in favor of the general public." City of Tampa v. Birdsong Motors, Inc., 261 So.2d 1, 3 (Fla. 1972). It is our view that the power of a municipality to tax should not be broadened by semantics which would be the effect of labeling what the City is here collecting a fee rather than a tax.
In City of Boca Raton v. State, 595 So.2d 25 (Fla. 1992), this court noted that a tax is an enforced burden imposed by sovereign right for the support of the government, the administration of law, and the exercise of various functions the sovereign is called on to perform. Klemm v. Davenport, 100 Fla. 627, 631, 129 So. 904, 907 (1930). Funding for the maintenance and improvement of an existing municipal road system, even when limited to capital projects as the circuit court did here, is revenue for exercise of a sovereign function contemplated within this definition of a tax.
User fees are charges based upon the proprietary right of the governing body permitting the use of the instrumentality involved. Such fees share common traits that distinguish them from taxes: they are charged in exchange for a particular governmental service which benefits the party paying the fee in a manner not shared by other members of society, National Cable Television Assn. v. United States, 415 U.S. 336, 341, 94 S.Ct. 1146, 1149, 39 L.Ed.2d 370 (1974); and they are paid by choice, in that the party paying the fee has the option of not utilizing the governmental service and thereby avoiding the charge. Emerson College v. City of Boston, 391 Mass. 415, 462 N.E.2d 1098, 1105 (1984) (citing City of Vanceburg v. Federal Energy Regulatory Comm'n, 571 F.2d 630, 644 n. 48 (D.C. Cir.1977), cert. denied, 439 U.S. 818, 99 S.Ct. 79, 58 L.Ed.2d 108 (1978)). The above concept of user fees was approved by this Court in City of Daytona Beach Shores v. State, 483 So.2d 405 (Fla. 1985). The City's transportation utility fee falls within our definition of a tax, not our definition of a user fee.
The circuit court found this transportation utility fee to be similar to the concept of impact fees which this Court has approved. Impact fees imposed by a municipality were upheld in Contractors and Builders Association v. City of Dunedin, 329 So.2d 314 (Fla. 1976). However, in that case, impact fees were clearly limited:

*4 Raising expansion capital by setting connection charges, which do not exceed a pro rata share of reasonably anticipated costs of expansion, is permissible where expansion is reasonably required, if use of the money collected is limited to meeting the costs of expansion. Users "who benefit expecially [sic], not from the maintenance of the system, but by the extension of the system ... should bear the cost of that extension." Hartman v. Aurora Sanitary District, [23 Ill.2d 109, 177 N.E.2d 214, 218 (Ill. 1961)]. On the other hand, it is not "just and equitable" for a municipally owned utility to impose the entire burden of capital expenditures, including replacement of existing plant, on persons connecting to a water and sewer system after an arbitrarily chosen time certain.
The cost of new facilities should be borne by new users to the extent new use requires new facilities, but only to that extent. When new facilities must be built in any event, looking only to new users for necessary capital gives old users a windfall at the expense of new users.
Id. at 320-21 (footnote omitted).
Thus, the impact fee in Contractors and Builders Association v. City of Dunedin was a valid user fee because it involved a voluntary choice to connect into an existing instrumentality of the municipality. The Port Orange fee, unlike Dunedin's impact fee, is a mandatory charge imposed upon those whose only choice is owning developed property within the boundaries of the municipality.
The circuit court cites to storm-water utility fees as being analogous to the transportation utility fee. However, storm-water utility fees are expressly authorized by section 403.031, Florida Statutes (1993). Similarly, various municipal public works and charges for their use are authorized by chapter 180, Florida Statutes (1993). However, the City's transportation utility fee is not authorized by chapter 180, Florida Statutes.
What the City's transportation utility fee does is convert the roads and the municipality into a toll road system, with only owners of developed property in the city required to pay the tolls. We find no statutory or constitutional authority for such tolls by a municipality.
Finally we recognize the revenue pressures upon the municipalities and all levels of government in Florida. We understand that this is a creative effort in response to the need for revenue. However, in Florida's Constitution, the voters have placed a limit on ad valorem millage available to municipalities, art. VII, § 9, Fla. Const.; made homesteads exempt from taxation up to minimum limits, art. VII, § 9, Fla. Const.; and exempted from levy those homesteads specifically delineated in article X, section 4 of the Florida Constitution. These constitutional provisions cannot be circumvented by such creativity.
The issuance by the City of transportation utility revenue bonds in an aggregate principal amount not to exceed $500,000, pursuant to Ordinance No. 1992-28, is not authorized and is hereby invalidated. The circuit court's judgment is reversed.
It is so ordered.
GRIMES, C.J., and OVERTON, SHAW, KOGAN, HARDING and ANSTEAD, JJ., concur.
NOTES
[1] City of Port Orange Resolution No. 92-71, section 2, sets forth the following rates to be utilized in determining transportation utility fees:

 Property Class Rate ($/month)
 Commercial Property generating
 0-142 trips per day 1.29
 Commercial Property generating
 143-6,000 trips per
 day .0002984/trip
 Dwellings on Public Roads 1.29
 Dwellings on Private Roads .50
 Dwellings on State or County
 Roads .50