POLSTON, J.
Appellants (collectively referred to as the State) argue that the trial court erred by ruling that statutes directing portions of civil filing fees to the general revenue fund are unconstitutional.[1] We agree and reverse the trial court as explained below.
I. BACKGROUND
On June 3, 2010, the trial court granted summary judgment and declared unconstitutional sections of the Florida Statutes that direct portions of civil action filing fees to the general revenue fund. Specifically, the trial court ruled that provisions of sections 28.24(1)(a), 28.241(a)(2)(d), 28.241(2), 34.041(1)(b), and 28.2455, Florida Statutes (2009), are unconstitutional and void.
The trial court concluded that, through these statutes, the Legislature has imposed an unconstitutional tax because litigants’ filing fees are sent to the general revenue fund to be spent on unrelated *747 government activities. The trial court stated that it is of no consequence that the Legislature appropriates to the courts an amount greater than the amount generated by the first $80.00 of the filing fees. The trial court explained that “[t]he Legislature is simply taxing one group of citizens and spending the money on unrelated governmental activities, which is illegal and unconstitutional.” Citing Flood v. State ex rel. Homeland Co., 95 Fla. 1003, 117 So. 385 (1928), and Farabee v. Board of Trustees, 254 So.2d 1 (Fla.1971), the trial court determined that depositing a portion of the filing fees into the general revenue fund denies access to the courts. The trial court order also stated that the provisions at issue “deny the citizens of this state the right to have their courts adequately funded, in violation of Article V, Section 14 and the due process, equal protection, [and] right to jury trial guarantees ... accorded under the Florida Constitution.” The trial court severed the offending provisions, enjoined the State from enforcing them, and ordered the State to “ensure that the injunction is reflected in the financial operations of this state.”
II. UNCONSTITUTIONAL TAX DENYING ACCESS TO COURTS
The trial court ruled that statutes directing portions of civil filing fees to the general revenue fund are an unconstitutional tax denying access to courts. The Appellees argue that the trial court’s ruling is correct because the statutes are unconstitutional both facially and as applied. The State asserts that the statutes are facially constitutional because there is a set of circumstances whereby the statutes can be constitutional, namely if the Legislature appropriates more to the costs of the administration of justice than the amount of civil filing fees deposited into the general revenue fund. Moreover, the State argues that the statutes are constitutional as applied because the Legislature has in fact appropriated more to support the administration of justice than the amount of fees deposited into the general revenue fund. We agree with the State. Directing a portion of the filing fees to the general revenue fund for further appropriation is an accounting mechanism reasonably related to the governmental purpose of funding the administration of justice. See Lane v. Chiles, 698 So.2d 260, 262 (Fla.1997) (“Generally, a state statute must be upheld if it meets the rational relationship test; that is, if there is any reasonable relationship between the act and the furtherance of a valid governmental objective.” (quoting trial court’s order)).

A. Facial Constitutional Challenge

The constitutionality of a statute is a question of law subject to de novo review. See City of Miami v. McGrath, 824 So.2d 143, 146 (Fla.2002). “While we review decisions striking state statutes de novo, we are obligated to accord legislative acts a presumption of constitutionality and to construe challenged legislation to effect a constitutional outcome whenever possible.” Fla. Dep’t of Revenue v. City of Gainesville, 918 So.2d 250, 256 (Fla.2005) (quoting Fla. Dep’t of Revenue v. Howard, 916 So.2d 640, 642 (Fla.2005)). Further, “in a facial constitutional challenge, we determine only whether there is any set of circumstances under which the challenged enactment might be upheld.” Id. at 265. “If any state of facts, known or to be assumed, justify the law, the court’s power of inquiry ends.” State v. Bales, 343 So.2d 9, 11 (Fla.1977).
Article I, section 21 of the Florida Constitution provides that “[t]he courts shall be open to every person for redress of any injury, and justice shall be administered without sale, denial or delay.” The statutory provisions at issue transfer a portion *748 of civil filing fees paid by litigants in circuit courts, county courts, and appellate courts into the general revenue fund. See §§ 28.241(l)(a)l.a.; 28.241(l)(a)2.d.; 28.241(2), Fla. Stat. (2009) ($80 of each civil litigant’s filing fee in circuit court and appellate courts must be deposited into the general revenue fund); § 34.041(l)(b), Fla. Stat. (2009) (“The first $80 of the filing fee collected [for civil actions in county court] under subparagraph (a)4. shall be remitted to the Department of Revenue for deposit into the General Revenue Fund.”); § 28.2455, Fla. Stat. (2009) (ordering annual transfer of any funds in excess of amount needed for clerks’ budgets from the clerks of court trust fund to the general revenue fund).
In State v. City of Pori Orange, 650 So.2d 1, 3 (Fla.1994) (citing City of Boca Raton v. State, 595 So.2d 25 (Fla.1992)), this Court defined a tax as “an enforced burden imposed by sovereign right for the support of the government, the administration of law, and the exercise of various functions the sovereign is called on to perform.” In contrast, we defined user fees as “charges based upon the proprietary right of the governing body permitting the use of the instrumentality involved. Such fees share common traits that distinguish them from taxes:”
they are charged in exchange for a particular governmental service which benefits the party paying the fee in a manner not shared by other members of society; and they are paid by choice, in that the party paying the fee has the option of not utilizing the governmental service and thereby avoiding the charge.
Port Orange, 650 So.2d at 3 (citations omitted).
In Flood, we addressed whether a statute establishing a docket fee to be used for a law library and other general county purposes was an invalid tax on litigants. The statute provided that each plaintiff in a circuit court had to pay a docket fee of $10, which was to be deposited into a special fund for establishing and maintaining a law library in the county. Flood,, 117 So. at 386. The statute also provided that “any balance remaining thereafter [was] to be used and applied as said board [of county commissioners] may from time to time deem best for general county purposes.” Id. (quoting ch. 12004, Laws of Fla. (1927)). We concluded that the fee was a tax repugnant to the right of access to courts contained in Florida’s Constitution, reasoning as follows:
It is clear that to call this a fee is a misnomer. It is a tax levied and collected for a county purpose, if the establishment of a law library may be considered a county purpose. No part of the so-called fee is appropriated for the payment of any services rendered by the clerk rendering the service in the case.
[[Image here]]
... The act is clearly an attempt to levy a tax on those who must bring their causes into court and to require the payment of such tax for the benefit of the public treasury, and is an abrogation of the administration of right and justice.
Id. at 387.
Thereafter, in Farabee, we addressed a challenge to a statute allocating a portion of a new $10 filing fee to the Lee County Law Library. “Under the statutory formula the Law Library received $3.00 plus 20% of $10.00 or a total allocation of $5.00 out of each filing fee paid to the Clerk.” Farabee, 254 So.2d at 3. This Court in Farabee rejected the Clerk’s argument, which was based upon Flood, that the portion of the filing fee payable to the law library was an unconstitutional tax on litigants. Id. at 5. We concluded that the law library was “essential to the administration *749 of justice today, and it is appropriate that its cost be assessed against those who make use of the court systems of our state.” Id. We distinguished Farabee from our prior decision in Flood, by pointing out in particular that Flood involved a fee that was used to fund general county purposes:
We deem it especially significant in Flood, that the balance of the funds remaining after adequate provision for the law library were to be used for “general county purposes” as directed by the board of county commissioners. Since at least part of the fee was available to the county for the building of roads, schools, and so on, it could not be said that the fee levied was a cost of the administration of justice.
Id. This Court in Farabee also receded from its prior language in Flood that may have indicated that a law library was not essential to the justice system. Id.
Based upon our decisions in Flood and Farabee, a statutory filing fee is not considered an unconstitutional tax repugnant to court access if the fee is used to fund the costs of the administration of justice. There is no requirement in the Florida Constitution that the very money paid for filing fees be used to fund the administration of justice. Money is fungible. See generally 53A Am.Jur.2d Money § 18 (2006) (“Money is in its nature sever-able; one coin or note has the same essential qualities and value possessed by any other of like denomination. In other words, money is fungible or interchangeable.”) (footnotes omitted); Williams Mgmt. Enters., Inc. v. Buonauro, 489 So.2d 160, 164 (Fla. 5th DCA 1986) (“[A]s Blackstone noted, normally money is fungible property, like grain, cotton, etc., which, if commingled with other similar money, is incapable of specific identification-”). Once the filing fees are eom-mingled with other state money in the general revenue fund, the filing fees lose their separate character and become interchangeable with the other state money. Therefore, the Legislature would be using the filing fees to fund the administration of justice if it funds the justice system at a level at least equal to the amount of filing fees that is commingled with other state money in the general revenue fund.
Accordingly, the statutes, on their face, do not constitute an unconstitutional tax. See City of Gainesville, 918 So.2d at 256 (explaining that a statute is only facially unconstitutional if “no set of circumstances exists under which the statute would be valid”).

B. As-Applied Constitutional Challenge

The only portion of Appellees’ challenge that could be considered an as-applied challenge relates to the trial court’s finding that the Legislature in 2008 appropriated over $50 million of the amount generated from the increased civil filing fees to the Department of Corrections for prison operations. However, because the Legislature appropriated more to support the administration of justice than the amount of civil fees deposited into the general revenue fund, the filing fee statutes were applied in a constitutional manner.
According to the trial court’s order, the total cumulative filing fees deposited into the general revenue fund for fiscal year 2008-2009 was $186,961,960.23. In contrast, the Legislature appropriated over $1 billion to support the judicial branch and justice administration for fiscal year 2008-2009. Ch. 2008-152, § 4 (justice administration appropriations), § 7 (judicial branch appropriations), Laws of Fla.; Ch. 2009-1, § 4, § 7 (reductions in 2008-2009 *750 appropriations).[2] For the judicial branch alone, the Legislature appropriated over $433 million for fiscal year 2008-2009, more than $387 million of which was specifically appropriated from general revenue. Ch. 2008-152, § 7 (judicial branch appropriations), Laws of Fla.; Ch. 2009-1, § 7 (reductions in 2008-2009 appropriations), Laws of Fla. Because the Legislature funded the costs of the administration of justice with far more than the amount of filing fees deposited into the general revenue fund, the filing fee statutes are not operating as an unconstitutional tax.
The Alabama Supreme Court rejected a similar argument in Fox v. Hunt, 619 So.2d 1364 (Ala.1993). Based upon the Texas Supreme Court decision in LeCroy v. Hanlon, 713 S.W.2d 335 (Tex.1986), the plaintiff in Fox argued that a statutory jury fee was actually an unconstitutional tax on the right to a jury trial because a portion of the fee was paid into Alabama’s general fund. Fox, 619 So.2d at 1366. However, the Alabama court noted that in 1989-90 the State of Alabama spent over $59 million more on its judicial system than the amount collected from the jury fees. Id. at 1367. As a result, the Alabama Supreme Court held that the jury fee did not constitute an unconstitutional tax, reasoning as follows:
This Court would have to deny the economic reality of the Legislature’s funding the judiciary in favor of an accounting artifice in order to hold that any portion of the jury trial fees collected by the circuit court clerks actually went to programs, other than the judiciary, funded through the state’s general fund.

Id.

In LeCroy, the Texas Supreme Court held that a statute, which directed a portion of filing fees to go to state general revenues, was an unconstitutional tax on the right of access. Because a portion of the filing fees was allocated to Texas’ general revenue fund, the Texas court concluded that “the money goes to other statewide programs besides the judiciary.” 713 S.W.2d at 341. The Texas Supreme Court reasoned as follows:
The $11 million in general revenues raised from the fee flows out of the treasury at random. Since the judiciary accounts for only approximately 1/2 of 1% of state funding, 99.5% of the revenue generated from the fee must go to other programs besides the judiciary.
Id. at 341 n. 9. However, as the dissent in LeCroy pointed out, this logic is quite flawed:
The court holds that “filing fees that go to state general revenues — in other words, taxes on the right to litigate that pay for other programs besides the judiciary — are unreasonable impositions on the state constitutional right of access to the courts.” The court thus implies that if the $50 increase went into a special fund for the benefit of the courts, the act would be constitutional. As the state observes, however, a special fund is no more than an accounting device. Since dollars are fungible and more money will be spent on the court system than will be taken in under Section 32, it is absurd to conclude money collected from fees “will pay for other programs besides the judiciary.” The state’s annual share of the filing fee is expected to be approximately $11,000,000 while the State’s annual cost will be over $52,000,000. See Art. of May 27, 1985, ch. 980, art. IV, 1985 Tex. Sess. Law *751 Serv. 7284 (Vernon). As long as the State pays more in financing the judiciary than the courts receive in user fees, the court’s logic is flawed. This court need not presume that any portion of the fee increase goes to support general welfare programs unrelated to the court system. If any presumption is to be made, it should be in favor of the validity of the statute.
Id. at 345-46 (Gonzalez, J., dissenting). Like the Alabama Supreme Court, we decline to adopt the contrary reasoning of the Texas Supreme Court in LeCroy. See Fox, 619 So.2d at 1366-67.
III. UNCONSTITUTIONAL FUNDING OF COURTS
The trial court ruled that the filing fee statutes “also deny the citizens of this state the right to have their courts adequately funded in violation of article V, section 14, and the due process, equal protection, [and] right to jury trial guarantees ... accorded under the Florida Constitution.” The filing fee statutes at issue are not contrary to article V, section 14 of the Florida Constitution.
Section 14 details the following funding requirements for Florida’s justice system:
(a) All justices and judges shall be compensated only by state salaries fixed by general law. Funding for the state courts system, state attorneys’ offices, public defenders’ offices, and court-appointed counsel, except as otherwise provided in subsection (c), shall be provided from state revenues appropriated by general law.
(b) All funding for the offices of the clerks of the circuit and county courts performing court-related functions, except as otherwise provided in this subsection and subsection (c), shall be provided by adequate and appropriate filing fees for judicial proceedings and service charges and costs for performing court-related functions as required by general law. Selected salaries, costs, and expenses of the state courts system may be funded from appropriate filing fees for judicial proceedings and service charges and costs for performing court-related functions, as provided by general law. Where the requirements of either the United States Constitution or the Constitution of the State of Florida preclude the imposition of filing fees for judicial proceedings and service charges and costs for performing court-related functions sufficient to fund the court-related functions of the offices of the clerks of the circuit and county courts, the state shall provide, as determined by the legislature, adequate and appropriate supplemental funding from state revenues appropriated by general law.
(c) No county or municipality, except as provided in this subsection, shall be required to provide any funding for the state courts system, state attorneys’ offices, public defenders’ offices, court-appointed counsel or the offices of the clerks of the circuit and county courts performing court-related functions. Counties shall be required to fund the cost of communications services, existing radio systems, existing multi-agency criminal justice information systems, and the cost of construction or lease, maintenance, utilities, and security of facilities for the trial courts, public defenders’ offices, state attorneys’ offices, and the offices of the clerks of the circuit and county courts performing court-related functions. Counties shall also pay reasonable and necessary salaries, costs, and expenses of the state courts system to meet local requirements as determined by general law.
(d) The judiciary shall have no power to fix appropriations.
*752 Based upon this plain language, the court-related functions of the clerks’ offices are to be funded entirely from filing fees and service charges unless constitutionally required to be supplemented by other state revenues. Furthermore, section 14 requires state revenues appropriated by general law to fund the court system, state attorneys’ offices, public defenders’ offices, and court-appointed counsel. However, subsection 14(b) gives the Legislature the option of using filing fees to fund “[s]elected salaries, costs, and expenses of the state courts system ... as provided by general law.” There is no language in section 14 of article V (or any provision of the Florida Constitution) that prevents the Legislature from exercising its option to use filing fees to fund the administration of justice by directing certain portions of the filing fees to the general revenue fund before it then appropriates this money to the costs of the administration of justice.
The trial court’s ruling that the statutes violated the due process, equal protection, and right to jury trial provisions of the Florida Constitution appears to be premised upon a determination that Florida’s courts are inadequately funded. But because the trial court’s order does not include any reasoning or additional findings of fact supporting its conclusion, we agree with the State that there is not competent substantial evidence in the record to support the trial court’s determination that Florida courts are unconstitutionally underfunded. The trial judge simply took judicial notice of underfunding based upon the fact that he had recently received a two-percent reduction in his salary. But this is not evidence that the judicial branch is unconstitutionally underfunded. And while this Court has stated that Florida’s court system is operationally underfunded, see e.g., In re Certification of Need for Additional Judges, 29 So.3d 1110 (Fla. 2010), we have not determined that the judiciary is underfunded to the point of it being a violation of the constitution. Moreover, we agree with the State that the trial court’s ruling on this claim is based upon the Appellees’ erroneous position that the cause of underfunding is the existence of the challenged statutes rather than specific appropriations decisions.
IV. CONCLUSION
The filing fee statutes, on their face, do not constitute an unconstitutional tax because the Legislature may appropriate more to the administration of justice than the amount of civil fees deposited into the general revenue fund, and because the Legislature has in fact done so, the statutes are not unconstitutional as applied. The statutes do not conflict with section 14 of article V of the Florida Constitution, and the record in this case does not otherwise support the trial court’s ruling that the courts are unconstitutionally underfunded. Accordingly, we reverse the trial court, lift the injunction, and remand with instructions to dismiss the complaint for declaratory and injunctive relief.
It is so ordered.
CANADY, C.J., and PARIENTE, LEWIS, QUINCE, LABARGA, and PERRY, JJ., concur.

. Appellants Governor Crist, et al., and Chief Financial Officer Sink appealed the judgment of the circuit court to the First District Court of Appeal, which certified to this Court that the judgment is of great public importance, affects the proper administration of justice throughout the State, and requires immediate resolution by this Court. We have jurisdiction. See art. V, § 3(b)(5), Fla. Const.

. It is undisputed that more was spent for the judicial branch and for the administration of justice than was collected as filing fees. Accordingly, there is no issue in the case as to what must be included as administration of justice.