# Supreme Court of Florida

_____

No. SC14-1603
_____

**FLORIDA BANKERS ASSOCIATION, etc.,**
Appellant,

vs.

**FLORIDA DEVELOPMENT FINANCE CORPORATION, etc., et al.,**
Appellees.

_____

No. SC14-1618
_____

**ROBERT REYNOLDS,**
Appellant,

vs.

**FLORIDA DEVELOPMENT FINANCE CORPORATION, etc., et al.,**
Appellees.

[October 15, 2015]

LABARGA, C.J.

In these consolidated cases, the Florida Bankers Association (FBA) and

Robert Reynolds appeal the judgment of the Circuit Court of the Second Judicial

Circuit, in and for Leon County, validating bonds proposed to be issued by the

Florida Development Finance Corporation (FDFC), a public body corporate and politic in the State of Florida. We have jurisdiction. See art. V, § 3(b)(2), Fla. Const. The purpose of the bonds is to finance qualifying improvements pursuant to the Property Assessed Clean Energy Act (PACE Act), established by the Legislature in section 163.08, Florida Statutes (2014).[1]

The PACE Act provides for issuance of bonds to finance the retrofitting of existing improved properties with qualifying improvements for energy conservation, renewable energy, clean energy, and hurricane protection. Under the program, FDFC and participating local governments enter into interlocal agreements that will provide the PACE program benefits in those localities. Participation in the program by local governments and by property owners is completely voluntary. Participating property owners enter into financing agreements to provide for repayment of the cost of the improvements by way of voluntary non-ad valorem assessments imposed upon the benefitted property. As we explain below, we affirm the amended final judgment of the circuit court, but

---

1. Although section 163.08, Florida Statutes, does not use the terms "PACE" or "Property Assessed Clean Energy," these terms are commonly used to refer to programs providing for retrofitting improved properties with energy and wind protection improvements, such as Florida's program. See FHFA Statement on Certain Energy Retrofit Loan Programs, Federal Housing Finance Agency, July 6, 2010; see also Victor M. Hanna, Stop, Think, Build, Repeat: Using Behavioral Economics to Better Design Energy Efficiency Policies for Our Cities' Buildings, 69 (U. of Miami L. Rev.) 241, 283 (2014).

remand with directions to the circuit court to require FDFC to amend and approve the amended bond documents and submit the amended documents to the circuit court as directed herein. We turn first to discuss the appeal by FBA.

## I.  FLORIDA BANKERS ASSOCIATION

Appellant FBA, an association of Florida banks, did not intervene or appear in the circuit court proceedings below. Only after the circuit court entered its amended final judgment on July 18, 2014, did FBA file an appeal, arguing that the PACE Act is an unconstitutional impairment of contracts. FDFC has challenged the standing of FBA to appear in this appeal. To support its claim of standing notwithstanding its failure to appear in the bond validation proceeding below, FBA relies on Meyers v. City of St. Cloud, 78 So. 2d 402 (Fla. 1955), in which this Court allowed citizens, taxpayers, and property owners who had not appeared in the trial court to appear for the first time on appeal in a bond validation proceeding. Id. at 404.

We recently receded from Meyers in Reynolds v. Leon County Energy Improvement District, SC14-710, slip op. at 4 (Fla. Oct. 1, 2015), because its reasoning was not in accord with the statutory scheme governing bond validation proceedings. However, even our decision in Meyers would not have conferred standing upon FBA. Meyers "dealt with the right of property owners and taxpayers." Rich v. State, 663 So. 2d 1321, 1324 (Fla. 1995). As FDFC correctly

argues, FBA has never shown that it is a citizen, taxpayer, or property owner in any jurisdiction where the FDFC bonds will support PACE improvements. Moreover, FBA presented no evidence that it suffered any specific injury or has a stake in the matter sufficient for standing. That showing had to occur in the circuit court. Accordingly, the appeal brought by FBA is dismissed. We turn next to the claims of Robert Reynolds in this appeal.

## II. REYNOLDS' CLAIMS

Appellant Reynolds, a property owner in Leon County, appeared in the circuit court and raised several objections to the bond validation proceeding. In this appeal, he raises three claims which he contends require reversal of the amended final judgment of validation entered by the circuit court. Reynolds contends in his first claim that the circuit court erred in allowing an amended financing agreement to be submitted by FDFC, and that the matter was not ripe for determination. Second, he contends that the judgment must be reversed because some of the bond documents approved by FDFC and submitted with the complaint for validation refer to judicial foreclosure as a remedy in violation of the PACE Act. Third, he contends that the judgment must be reversed because some of the bond documents would authorize FDFC to levy the special non-ad valorem assessments when those assessments should be levied by the participating local

government, and because there is no executed interlocal agreement in place calling for that procedure, the bond validation should have been denied.

Before discussing Reynolds' claims in detail, we set forth the facts and procedural background against which Reynolds filed his objections to the bond validation and the standard of review in this appeal. We then discuss each of Reynolds' claims in turn.

## III. FACTUAL AND PROCEDURAL BACKGROUND

FDFC is a corporate and political entity created by the Florida Development Finance Corporation Act of 1993 initially to engage in activities conducive to economic development in Florida. See § 288.9604, Fla. Stat. (1993); § 288.9604(1), Fla. Stat. (2010). In addition to activities enhancing economic development, FDFC has express statutory authority to issue bonds for programs authorized under the PACE Act, as set forth in section 163.08, Florida Statutes (2014). See § 288.9606(7)(c), Fla. Stat. (2014). On February 27, 2014, the FDFC filed its complaint in the circuit court of the Second Judicial Circuit in Leon County seeking to determine the validity of a series of bonds proposed to be issued under the PACE Act. The bond funds are to be used to pay for qualifying improvements under section 163.08, Florida Statutes, which improvements are carried out by approved private contractors. The repayment obligations for the bonds are tied to the properties and not to the individuals, and repayment is

collected through voluntary special non-ad valorem assessments placed on the property. The special non-ad valorem assessments are to be collected by the tax collector, similar to the method for collecting taxes and other non-ad valorem assessments.

The Complaint sought validation of bonds not exceeding $2 billion in aggregate principal at any one time of "Florida Development Corporation Special Assessment Revenue Bonds (Florida HERO Program), in various series."[2] The bond validation complaint also sought determination of the validity of the pledge of revenues for the repayment of the bonds, the validity of the non-ad valorem assessments that would constitute all or part of the revenues pledged, the lien priority of the assessments, and other proceedings related to the issuance of bonds. Attached to the complaint was a master bond resolution approved by the governing board of FDFC, a form master indenture agreement, a list of local governments that have executed prior but unrelated interlocal agreements with FDFC, a form interlocal agreement for this PACE Act bond issue, and a form financing

---

2. "HERO" stands for "Home Energy Renovation Opportunity." See Smart Growth and Green Buildings, 2012 ABA Environment, Energy, and Resources Law: The Year in Review 371, 375 (noting that a Home Energy Renovation Opportunity program "provides low-cost financing to homeowners" for retrofitting).

agreement to be executed by the property owners for the PACE improvements and assessments.

The master bond resolution states that FDFC's HERO Program bonds shall serve the public purposes described in the Florida PACE Act, section 163.08(1), Florida Statutes, and promote economic development in the state, thereby benefitting the citizens. The resolution further states that the proceeds of the bonds shall be used for purposes of funding qualifying improvements pursuant to the PACE Act, as well as capitalized interest, costs of issuance, fund reserves, administrative expenses, and recurring costs relating to the program and the issuance of the bonds.

## A. Reynolds' Response to the Bond Validation Complaint

An order to show cause was issued by the circuit court and published as required by section 75.06, Florida Statutes (2014). The order directed the State Attorneys of any circuit in which an interlocal agreement had been entered, as well as taxpayers, property owners and citizens of Leon County, and any other persons having or claiming an interest in the bonds to appear at a hearing on June 11, 2014, to show cause why the validation judgment should not be granted. Reynolds filed a response to the order to show cause alleging that he is a property owner in Leon County, Florida, and thus a party-defendant to the action who may intervene pursuant to section 75.07, Florida Statutes (2014).

Reynolds further alleged that although chapter 288, Florida Statutes, which created FDFC as a public instrumentality, provides certain enumerated powers to FDFC which relate to bond financing for PACE programs, the statute does not provide FDFC with the power to levy non-ad valorem assessments on real property, and that only local governments possess the power to impose such assessments. He further contended that a local government cannot delegate to FDFC the power to assess real property. The impetus for this objection was the fact that the model financing agreement attached to the complaint, as well as certain other bond documents, provided that the local government will delegate to FDFC the right to impose the non-ad valorem assessments on the real property that is improved with PACE improvements.

As a second objection to the validation, Reynolds claimed in his response to the order to show cause that the assessment scheme in the bond documents includes an unlawful remedy, in that the financing agreement includes language allowing for judicial foreclosure as a remedy for nonpayment of the special non-ad valorem assessments. Section 163.08, Florida Statutes, under which FDFC seeks to pledge the assessments for repayment, sets forth specific requirements for collection of assessments limited to the "uniform method" of collection in section 197.3632, Florida Statutes. That statute prescribes a method for collection of non-ad valorem assessments on the same bill as taxes and in the same manner in which

delinquent taxes are collected, and does not allow for the assessment to be collected through a judicial foreclosure action.

## B. The Bond Validation Hearing

A show cause hearing was held on the bond validation complaint of FDFC in the circuit court of the Second Judicial Circuit on the date set forth in the order to show cause. FDFC presented FDFC Executive Director William Spivey, who explained that FDFC is governed by a five-member board of directors appointed by the Governor. Spivey identified a form interlocal agreement and explained that FDFC has authority under section 288.9605(2), Florida Statutes (2014), to enter into such interlocal agreements and that it would be the local government and not FDFC that would impose the non-ad valorem assessments on the property improved under the PACE program. At the show cause hearing, counsel for FDFC also stipulated that FDFC does not have authority to—and does not intend to— impose the non-ad valorem assessments. However, no amended documents were submitted reflecting this fact.

Spivey also identified a form financing agreement, which he explained differed from the form financing agreement approved by the FDFC board and attached to the complaint. The amended form financing agreement had been modified to provide that the assessments would be collected in conformity with the "uniform method" for the levy, collection, and enforcement of non-ad valorem

assessments under chapter 197, Florida Statutes, as the PACE Act itself requires. The modification removed reference to the remedy of judicial foreclosure from section 4 of the agreement, and Spivey testified that FDFC is "willing to use" this modified language in the financing agreements to be entered into during implementation of the program under this bond issue. Reynolds' attorney did not object to admission of this document or testimony, but asked only to be allowed to inquire into the document on cross-examination.

Even though an amended form financing agreement was submitted with a change to section 4, Spivey agreed that section 14 of the amended financing agreement continued to refer to judicial foreclosure by stating that no action by the property owner will be competent "to impair in any way FDFC's rights, including, but not limited to, the right to pursue judicial foreclosure of the Assessment lien or the right to enforce the collection of the Assessment or any installment thereof against the property." When questioned about this language in section 14, Spivey testified that "we need to take that out as well, because we are going to do it per the uniform collection." He stated, "If there [are] any other changes in here that need to be made to make that clear, then we can certainly make that since it is the form of the document itself." Spivey also explained that the FDFC board had not

formally adopted the modified financing agreement form, and that "the exhibits to that master bond resolution will have to come back to the board for final approval."

The circuit court judge announced at the conclusion of the show cause hearing that he would grant the relief requested in the complaint and validate the bonds "under the proviso that assessment collection has to be in accordance with law, which as I understand it, Chapter 197, and that there be no statement in the documents that can be interpreted to mean that the Plaintiff can impose assessments." In addition, the court ruled that Reynolds would be granted intervenor status.

On June 16, 2014, the circuit court issued a final judgment in the case validating the PACE bonds. In the judgment, the court found that FDFC may finance "qualifying improvements" under the PACE Act, which shall serve a public purpose. The final judgment further stated that "[t]he form of the Financing Agreement, as modified to clarify that the Program Special Assessments shall be collected through the Uniform Collection method, was introduced into evidence as Exhibit '5.' " Section Twenty-One of the final judgment reiterated that the assessments must be collected pursuant to the "Uniform Collection method as set forth in Sections 197.3632 and 197.3635, Florida Statutes," and will be collected annually on the same bill as property taxes.

As to the authority for imposition of assessments, the final judgment stated, "The imposition of the Program Special Assessments shall be pursuant to the authority of the local governments that are parties to the Interlocal Agreements" and that FDFC "is authorized pursuant to the Interlocal Agreement to perform such administrative and procedural acts as may be agreed to between the parties to assist in [ ] facilitating the imposition of the Program Special Assessments."

### C. Motion for Rehearing and Amended Final Judgment

Reynolds filed a motion for rehearing alleging that the final judgment did not comport with the judge's rulings at the hearing in which the judge indicated that the bonds would be validated if the supporting documentation reflected that FDFC had no authority to impose non-ad valorem assessments, and that any such assessments must be imposed by the local government that is the party to the interlocal agreement. The motion for rehearing also alleged for the first time that the circuit court's admission of the amended financing agreement at the show cause hearing violated due process. Finally, the motion alleged that the circuit court lacked jurisdiction to validate the bonds because FDFC has not yet entered into any interlocal agreements with entities that have the power to impose assessments. Thus, the motion alleged, the complaint sought nothing more than an advisory opinion on an issue that is unripe for review.

A hearing on the motion for rehearing was held on July 15, 2014, after which the circuit court entered an amended final judgment. As to Reynolds' objection that the final judgment did not make clear that it would be the local government and not FDFC that has the power to, and will, impose the assessments, the circuit court concluded that the language in Section 28 of the original final judgment made that clear when it said, "The imposition of the Program Special Assessments shall be pursuant to the authority of the local governments that are parties to the Interlocal Agreements." With this background in mind, we set forth the standard of review in this bond validation appeal.

## IV. ANALYSIS

Our review of this bond validation proceeding is limited to three issues: (1) whether the public body has authority to issue the subject bonds; (2) whether the purpose of the obligation is legal; and (3) whether bond issuance complies with the requirements of law. See, e.g., Strand v. Escambia Cnty., 992 So. 2d 150, 154 (Fla. 2008) (citing City of Gainesville v. State, 863 So. 2d 138, 143 (Fla. 2003)). We remain mindful that the circuit court's order comes to the Court with a presumption of correctness and, thus, "[t]he appellant has the burden of demonstrating that the record and evidence [fail] to support the [bond issuer] and the trial court's conclusions." Donovan v. Okaloosa Cnty., 82 So. 3d 801, 805 (Fla. 2012) (quoting State v. Osceola Cnty., 752 So. 2d 530, 533 (Fla. 1999)). We

- 13 -

will review the trial court's findings of fact for competent, substantial evidence and review its conclusions of law de novo. Strand, 992 So. 2d at 154. "Subsumed within the inquiry as to whether the public body has the authority to issue the subject bond is the legality of the financing agreement upon which the bond is secured." Keys Citizens for Responsible Gov't, Inc. v. Fla. Keys Aqueduct Auth., 795 So. 2d 940, 946 (Fla. 2001) (quoting State v. City of Port Orange, 650 So. 2d 1, 3 (Fla. 1994)). We next discuss Reynolds' claims in this appeal.

## A. Due Process and Ripeness

In his first issue, Reynolds argues that he was denied due process when FDFC offered and the court accepted an amended financing agreement that removed language allowing judicial foreclosure as a remedy from section 4 of the original form financing agreement that had been attached to the complaint. This objection was not sufficiently preserved. At the bond validation hearing, when FDFC offered the amended financing agreement during the testimony of FDFC Executive Director William Spivey, Reynolds' attorney did not object to admission of this document or testimony about it, but asked only to be allowed to inquire into the document on cross-examination. In the motion for rehearing filed by Reynolds, he did object at that time to acceptance of the amended financing agreement, primarily citing the rights of parties not before the court.

Even if this issue had been sufficiently preserved, it lacks merit. In <u>Keys Citizens</u>, we held that constructive notice of the complaint was sufficient even though it did not mention that the court would also consider the validity of the mandatory sewer connection ordinance. 795 So. 2d at 949. We noted in <u>Keys Citizens</u> that the bond notification statutes do not require the specificity in the published notice that was urged by the citizens in that case. <u>Id.</u> Reynolds relies on our decision in <u>Ingram v. City of Palmetto</u>, 112 So. 861 (Fla. 1927). However, in <u>Ingram</u>, the City filed a petition for bond validation that "clearly did not comply with the affirmative requirements of the statute" that set forth what facts and allegations were to be in the petition. <u>Id.</u> at 862. The trial court permitted the petition to be amended to meet the requirements of the statute, but on review this Court found the procedure followed was improper. <u>Id.</u> We held, "If the amendments made the petition sufficient in law, the intervener (sic) was given no opportunity to take issue on the facts alleged. . . . Even if such proceeding may be regarded as due process of law, it is not such as is contemplated by the statute." <u>Id.</u> In this case, the intervenor—Reynolds—did have an opportunity both at the show cause hearing and at the hearing on his motion for rehearing to raise objections to the amended financing agreement and bring those objections and arguments to the court's attention.

We have explained that "[t]he specific parameters of the notice and the opportunity to be heard required by procedural due process are not evaluated by fixed rules of law, but rather by the requirements of the particular proceeding." Sch. Bd. of Palm Beach Cnty. v. Survivors Charter Sch., Inc., 3 So. 3d 1220, 1236 (Fla. 2009) (quoting Keys Citizens, 795 So. 2d at 948). The notice and opportunity to be heard given to Reynolds were sufficient for the requirements of this particular proceeding, especially in light of his failure to object to the amended document at the hearing. Further, the amendment to the model financing agreement was in accord with the law argued by Reynolds concerning the issue of judicial foreclosure, and provides no basis for this Court to reverse and require initiation of an entirely new proceeding.

Reynolds also contends that the bond validation judgment must be reversed because the issue was not ripe for determination due to the fact that FDFC had not yet entered into any interlocal agreements under the program and did not, itself, have the ability to impose the assessments required for repayment of the bonds. We disagree that this case was not ripe for bond validation or that the court lacked jurisdiction. Section 75.01, Florida Statutes (2014), confers jurisdiction on the circuit courts to determine the validity of bonds and certificates of indebtedness. Section 75.02, Florida Statutes, expressly states that the plaintiff in a bond validation proceeding "may determine its authority by law to issue bonds." This

- 16 -

presupposes that the bonds will not be issued and specific payment provisions enacted until after the validation proceeding. See also Boatright v. City of Jacksonville, 158 So. 42, 55 (Fla. 1934) (Whitfield, J., concurring) (noting that a bond validation proceeding allows the rights and immunities of the taxpayers and citizens to be determined before the bonds are issued). FDFC has statutory authority and a properly enacted resolution to issue the bonds and to seek a determination of the validity of the bond issue before it does so. Moreover, the record established that FDFC intends to execute interlocal agreements to provide for implementation of the PACE program in localities that choose to participate, and those local governments will levy and collect the non-ad valorem special assessments at issue here. Section 163.08(3) specifically states that the local government may impose the PACE assessments. Nowhere does the Legislature require that, before a PACE bond issue may be validated, the documents show specific, executed interlocal agreements or any specific assessments to be reviewed. Accordingly, relief is denied on this claim.

### B. Authority to Levy Non-ad Valorem Assessments

Reynolds next contends that the bond validation must be reversed because the assessment scheme set forth in the bond documents, which provides in several places that FDFC will impose the special assessments necessary to fund repayment of the bonds, is illegal because FDFC was not given express statutory authority to

levy the special assessments. Reynolds contends that FDFC's attempt to remedy this by stipulating at the hearing that it would not levy assessments, and that the local governments that will be parties to the interlocal agreements will levy the assessments, cannot support the validation of the bond issue. He further contends that the trial court's attempt to remedy this, by declaring that in any documents used in the bond program, FDFC will delete references to FDFC imposing assessments, does not eliminate the fatal flaw in the bond documents that were approved by the FDFC board and attached to the complaint.

We agree with Reynolds, and with FDFC, that FDFC does not have authority under the PACE Act to levy the special non-ad valorem assessments called for under the Act. First, and foremost, section 163.08(3), Florida Statutes (2014), specifically authorizes the local government to levy the non-ad valorem assessments. Second, section 288.9605(2)(e) states that FDFC may enter into interlocal agreements pursuant to section 163.01(7) with public agencies for the exercise of "any power, privilege, or authority consistent with the purposes of this act." That statutory authority, although broad, does not expressly grant FDFC the authority to levy the special non-ad valorem assessments. Third, collection of the special assessments on a combined tax notice, and enforcement of payment for the special assessments by sale of tax certificates and tax deeds, is performed by the local government.

Although we agree with Reynolds that the PACE Act does not authorize FDFC to levy the non-ad valorem assessments, we disagree that inclusion of that language in the bond documents is a basis to reverse the trial court's amended final judgment. The trial court agreed that the assessments would be collected by the local government and opined that section 28 of the amended final judgment made that fact clear. We conclude, however, that the language of the amended final judgment is subject to misinterpretation so long as any of the bond documents continue to contain references to FDFC imposing the special assessments. For that reason, we direct that on remand, the circuit court shall require FDFC to amend all bond documents that refer to FDFC having, or being delegated, authority to levy the non-ad valorem special assessments, in order to remove those references and to make clear that it is the local government that will levy such assessments.[3]

---

3. The model interlocal agreement approved by the FDFC and attached to the complaint states in section 4(A) that the public agency executing the interlocal agreement with FDFC "hereby delegates to FDFC the power to impose the Assessments . . . ." Section 4(B) refers to the power of FDFC to levy assessments. Section 6 of the master bond resolution provides that the interlocal agreements "shall provide the Corporation the authority to levy non-ad valorem assessments on property owners . . . ." Section 2(H) of the master bond resolution states in pertinent part that "[i]f required by law, it is the Corporation's intention to enter into interlocal agreements . . . pursuant to which such local governments shall provide the Corporation the authority to levy non-ad valorem assessments . . . ." The amended form financing agreement states in the "Recitals" section that the local government has consented to "FDFC conducting assessment proceedings." Exhibit B to the amended form financing agreement, relating to the schedule of annual assessment installments, states that the "program administrator will adjust

## C. Judicial Foreclosure as a Remedy for Non-Payment

Finally, Reynolds contends correctly, and the circuit court agreed, that the only collection method authorized by the Legislature for the special assessments is the "uniform method" set forth in chapter 197, Florida Statutes.  Although the amended final judgment makes no express reference to removing the word "foreclosure" from the documents, the circuit court did state in the amended final judgment that "[t]he Program Special Assessments levied and imposed against affected real property must be collected pursuant to the Uniform Collection method as set forth in Sections 197.3632 and 197.3635, Florida Statutes, pursuant to which non-ad valorem assessments are collected annually over a period of years on the same bill as property taxes."  The master bond resolution also states that the assessments shall be collected pursuant to the "Uniform Assessment Collection Act."  Reference to the uniform method of collection also appears in the form interlocal agreement.

Section 163.08(4), Florida Statutes, expressly provides in pertinent part that "[c]osts incurred by the local government for such purpose may be collected as a non-ad valorem assessment.  A non-ad valorem assessment shall be collected pursuant to s. 197.3632 . . . ."  § 163.08(4), Fla. Stat. (2014) (emphasis added).

the assessment and estimated maximum annual assessment installments, if necessary."

- 20 -

Thus, the assessments in this bond validation are mandated by statute to be collected under the "uniform method" provided in chapter 197, Florida Statutes.

Section 197.3632(8)(a), Florida Statutes, does not provide for judicial foreclosure as a remedy, but states that non-ad valorem assessments collected pursuant to the section shall be subject to all collection provisions of the chapter, "including . . . penalty for delinquent payment, and <u>issuance and sale of tax certificates and tax deeds for nonpayment</u>." § 197.3632(8)(a), Fla. Stat. (2014) (emphasis added). Thus, there is no doubt that collection of the assessments is required to be by the uniform method of collection set forth in chapter 197, and not by judicial foreclosure.

The amended financing agreement removed one reference to foreclosure as a remedy, but still refers to foreclosure in section 14, which states that a property owner will not be competent to impair FDFC's rights, including "the right to pursue judicial foreclosure of the Assessment lien." In addition, section 18 of the amended financing agreement also refers to foreclosure; and the master indenture refers to foreclosure in the definition of administrative expenses. All parties agreed at the show cause hearing, and now in this appeal, that the special PACE non-ad valorem assessments may not be collected by way of judicial foreclosure, and the bonds were validated under the condition that the collection of the assessments be pursuant to chapter 197. The circuit court anticipated that the bond

documents would be corrected to remove the references to foreclosure. However, to fully accomplish this, we direct that on remand, the circuit court shall require amendment of the documents to remove all references to judicial foreclosure, and that such amendments be approved by the governing board of FDFC.

## V. CONCLUSION

For the foregoing reasons, we dismiss the appeal of Florida Bankers Association for lack of standing. We affirm the circuit court's amended final judgment validating the Florida Development Finance Corporation special assessment revenue bonds. However, because additional steps are required to implement the circuit court's rulings and the rulings of this Court, we remand to the circuit court with instructions to require FDFC to amend the bond documents to remove all references to judicial foreclosure as a remedy and remove all references to the FDFC having, or being delegated, authority to levy the non-ad valorem assessments. We direct that the amended documents be filed in the circuit court following approval of the amendments by the governing board of the FDFC.

It is so ordered.

PARIENTE, QUINCE, CANADY, POLSTON, and PERRY, JJ., concur.
LEWIS, J., concurs in result only with an opinion.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION, AND
IF FILED, DETERMINED.

LEWIS, J., concurring in result only.

I recognize that the majority is correct in its determination as to what the Legislature has the power and authority to accomplish. Nevertheless, due to the limited review of the Court in bond validation proceedings, and because I have great concern with regard to the far-reaching impact of today's decision, I concur in result only. This government plan utilizes bonds to obtain funds for the purpose of providing what appears to be individual home improvement loans to private property owners to finance certain qualifying improvements to their homes—specifically, improvements that involve energy conservation and efficiency, renewable energy, and wind resistance (i.e., hurricane mitigation). See § 163.08(2)(b), Fla. Stat. (2014). The loans are then to be repaid through the levy of "special assessments" on the improved properties. I do not dispute that local governments can impose special assessments upon properties that receive a specific benefit from general improvements or services; however, there is no precedent in Florida that expressly holds a special assessment can be levied upon an individual property under circumstances such as these.

In Sarasota County v. Sarasota Church of Christ, 667 So. 2d 180 (Fla. 1995), this Court explained that

> special assessments must confer a specific benefit on the land
> burdened by the assessment and are imposed under the theory that the
> portion of the community that bears the cost of the assessment will

- 23 -

> receive a special benefit from the improvement or service for which the assessment is levied.
>
> Although a special assessment is typically imposed for a specific purpose designed to benefit a specific area or class of property owners, this does not mean that the costs of services can never be levied throughout a community as a whole. Rather, the validity of a special assessment turns on the benefits received by the recipients of the services and the appropriate apportionment of the cost thereof. This is true regardless of whether the recipients of the benefits are spread throughout an entire community or are merely located in a limited, specified area within the community.

Id. at 183 (citation omitted). Consistent with this description, special assessments have been historically and exclusively directed toward improvements or services that benefit a general area of real property within communities or specific areas. See, e.g., Morris v. City of Cape Coral, 163 So. 3d 1174, 1177 (Fla. 2015) (special assessment for fire protection services levied on all real property); Donovan v. Okaloosa Cnty., 82 So. 3d 801, 805 (Fla. 2012) (special assessment for beach restoration and renourishment levied on properties within a Municipal Service Benefit Unit); Citizens Advocating Responsible Envtl. Sols., Inc. v. City of Marco Island, 959 So. 2d 203, 204-05 (Fla. 2007) (special assessment for expansion of wastewater collection and treatment system imposed on users not served by the current system); Sarasota Church of Christ, 667 So. 2d at 182 (special assessment for stormwater improvements and services imposed on all developed property); Workman Enters., Inc. v. Hernando Cnty., 790 So. 2d 598, 600 (Fla. 5th DCA 2001) (special assessment for fire and rescue services levied on the five categories

of property within a county district);[4] see also 70C Am. Jur. 2d Special or Local Assessments § 1 (2011) ("Special or local assessments . . . are charges imposed on property owners within a limited area to help pay the cost of a local improvement which specially benefits property within that area."). In my view, it is not a proper use of special assessments, as they have been described by this Court and are commonly understood, to repay funds that were loaned for home improvements to only a specific individual home.

Moreover, because special assessments are to be fairly and reasonably apportioned in accordance with the benefits received, Sarasota Church of Christ, 667 So. 2d at 183, it is implicit that more than one property will benefit from the improvement. See Black's Law Dictionary 121 (10th ed. 2014) (defining apportionment as "Division into proportionate shares; esp., the division of rights and liabilities among two or more persons or entities." (emphasis supplied)). For a single property to be subject to one hundred percent of a special assessment because it is the only property that benefitted from a qualifying improvement is completely inconsistent with the concept of apportionment and how special assessments have been traditionally applied.

_____

4. This Court has also indicated that a special assessment can be levied throughout an entire taxing district, provided it confers a special benefit on the properties assessed and is properly apportioned. See Harris v. Wilson, 693 So. 2d 945, 947 (Fla. 1997).

- 25 -

The decision of the Legislature to allow what are essentially home improvement loans to be repaid through special assessments presents significant ramifications because these loans receive priority over existing mortgages, which I find troublesome.  See § 170.09, Fla. Stat. (2014) (noting that special assessments "shall remain liens, coequal with the lien of all state, county, district, and municipal taxes, superior in dignity to all other liens, titles, and claims, until paid . . . ." (emphasis supplied)); compare Gailey v. Robertson, 123 So. 692, 692-93 (Fla. 1929) (holding that a lien on property that was the result of a special assessment took priority over a preexisting mortgage, and rejecting claim that the result constituted an impairment of the vested right of the mortgagee) with First Nationwide Mortg. Corp. v. Brantley, 851 So. 2d 885, 887 (Fla. 4th DCA 2003) (holding that a city lien arising from a loan for home repairs was not superior to a preexisting mortgage because it was not the result of municipal services, a special assessment, or any type of lien covered by the city code of ordinances).  I am inclined to agree with the specially concurring opinion in Brantley that to allow individual home repair loans to take precedent over preexisting mortgages would present significant constitutional concerns.  See 851 So. 2d at 887-88 (Fleet, A.J., specially concurring) ("To accept the proposition that governmental assistance to an individual, natural or corporate, for residential improvement automatically

- 26 -

becomes superior in dignity to a previously recorded mortgage simply fails to pass constitutional muster.").

As explained by the Court of Appeals for the Eleventh Circuit, mortgage holders possess a constitutionally protected property right:

> In Sarasota County v. Andrews, 573 So. 2d 113 (Fla. 2d DCA 1991), the court found that a county's attempt to assert that a lien created by an ordinance was superior in right to a prior recorded mortgage, was a substantial impairment of the first mortgage lien for federal and state constitutional purposes. Id. at 115. Although Sarasota was decided under a contract impairment analysis, it nevertheless stands for the proposition that a mortgagee, who is in essence a party to a security contract, has a property right in preservation of its mortgage interest. See also Mailman Development Corp. v. Segall, 403 So. 2d 1137, 1138 (Fla. 4th DCA 1981) (holding that a "mortgagee should not be required to accept a substituted security interest since a mortgagee lien is a property right . . . .").
>
> Moreover, Florida law gives a mortgagee the right to foreclose and reforeclose its liens. Fla. Stat. § 697.01 (1993). Therefore, a mortgage is a cause of action creating a lien on property. See United of Florida, Inc. v. Illini Federal Savings & Loan Association, 341 So. 2d 793, 794 (Fla. 2d DCA 1977). The Supreme Court has specifically held that "a cause of action is a species of property protected by the Fourteenth Amendment's Due Process Clause." Logan v. Zimmerman Brush Co., 455 U.S. 422, 428, 102 S. Ct. 1148, 1154, 71 L. Ed. 2d 265 (1982).

Zipperer v. City of Fort Myers, 41 F.3d 619, 623 (11th Cir. 1995). Yet, the bonds under consideration can be issued, and special assessments levied by local governments, without input from mortgage holders because the majority has determined that they do not have standing to participate in these proceedings.

In the probate context, the United States Supreme Court has held that a nonclaim statute that only required notice by publication (which is the only notice to mortgagees here) was insufficient to protect the property interest of a creditor under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. Tulsa Prof'l Collection Servs., Inc. v. Pope, 485 U.S. 478, 481, 484-85 (1988). Instead, the Supreme Court determined that where the protected property interest of a known or reasonably ascertainable creditor will be adversely impacted by state action, due process requires actual notice of the government action that will impact a property interest. Id. at 487-88, 491. The general notice that was condemned by the Supreme Court in Pope is analogous to what has occurred here with regard to the special assessments, which clearly qualify as state action. The property interests of mortgage holders will unquestionably be adversely impacted due to the priority given to special assessments under Florida law, but those mortgage holders receive no actual notice of the bond validation proceedings and lack standing to challenge the designation of the loan repayments as superior to the property interests of prior mortgage holders. The rights of mortgage holders are also adversely impacted by the legislation after a property owner elects to participate in this loan process.

You may call a donkey a thoroughbred, but that donkey is going to remain a donkey. These home improvement projects stand out on an island by themselves

- 28 -

and, although they are very well intended, constitute an unprecedented expansion of the concept of "special assessments." It may be commendable for the government to assist citizens with renovations to their homes. However, by affirming the amended final judgment of the circuit court, it seems there will be no limit to the purposes for which special assessments can be levied. Future expansions will only further minimize and diminish mortgage holders' constitutional property rights.[5] These issues have not been fully briefed, nor have they been fully argued.

Despite my deep concerns, I recognize that it appears that precedent does not expressly address the use of special assessments in this fashion, and the decision as to what is to be labelled a "special assessment" may fall within the discretion of the Legislature. However, based upon the troublesome and far-reaching implications of this case, I concur in result only.

Two Cases:

An Appeal from the Circuit Court in and for Leon County – Bond Validations
    John C. Cooper, Judge – Case No. 372014CA000548XXXXXX

---

5. I do recognize some limitations to the concerns that I have expressed. If, for example, a property presents a public nuisance, and the local government levies a special assessment to correct or remove it for the benefit of a community or a specific area, it would be logical for such an assessment to take priority over a mortgage.

Ceci Culpepper Berman of Brannock & Humphries, Tampa, Florida, on behalf of Florida Bankers Association; and James C. Dinkins of Mark G. Lawson, P.A., Tallahassee, Florida, on behalf of Robert Reynolds,

     for Appellants

Gregory Thomas Stewart, Lynn Miyamoto Hoshihara, and Carly J. Schrader of Nabors, Giblin & Nickerson, P.A., Tallahassee, Florida, on behalf of Florida Development Finance Corporation; Raoul G. Cantero, III, Thomas Neal McAliley, and Jesse Luke Green of White & Case LLP, Miami, Florida, on behalf of Florida Development Finance Corporation; Jane Kreusler-Walsh, Rebecca Mercier Vargas, and Stephanie L. Serafin of Kreusler-Walsh, Compiani & Vargas, P.A., West Palm Beach, Florida, on behalf of Florida Development Finance Corporation; L. Thomas Giblin of Nabors, Giblin, et al., Tampa, Florida, on behalf of Florida Development Finance Corporation; Gerald Paul Hill, State Attorney, and Victoria Jacquelyn Avalon, Assistant State Attorney, Tenth Judicial Circuit, Bartow, Florida, on behalf of the State of Florida; Ralph Larizza, State Attorney, and Phillip Dale Havens, Assistant State Attorney, Seventh Judicial Circuit, Daytona Beach, Florida, on behalf of the State of Florida; and Philip Glen Archer, State Attorney, and Laura Michelle Moody, Assistant State Attorney, Eighteenth Judicial Circuit, Viera, Florida, on behalf of the State of Florida,

     for Appellees

Erin Lee Deady of Erin L. Deady, P.A., Lantana, Florida,

     for Amicus Curiae PACENow

Keith W. Davis of Corbett, White and Davis, P.A., Lantana, Florida,

     for Amicus Curiae Florida Green Finance Authority

George Steve Cavros, Fort Lauderdale, Florida,

     for Amicus Curiae Southern Alliance for Clean Energy, Inc.

Edward George Guedes and Chad Stuart Friedman of Weiss Serota Helfman Cole Bierman & Popok, P.L., Coral Gables, Florida,

for Amicus Curiae Green Corridor Property Assessment Clean Energy District

Richard Watson, Tallahassee, Florida,

for Amicus Curiae Associated Builders and Contractors of Florida, Inc.

Jody Lamar Finklea and Amanda L. Swindle, Tallahassee, Florida,

for Amicus Curiae Florida Municipal Electric Association, Inc.

Joshua Douglas Smith and Travis Ritchie, San Francisco, California,

for Amicus Curiae Sierra Club

Elizabeth Wilson Neiberger and Susan Hamilton Churuti of Bryant Miller Olive P.A., Tallahassee, Florida; Virginia Saunders Delegal, General Counsel, Florida Association of Counties, Tallahassee, Florida; Harry Morrison, Jr. and Kraig Armantrout Conn, Florida League of Cities, Inc., Tallahassee, Florida; Herbert William Albert Thiele, Leon County Attorney, Tallahassee, Florida; and Daniel Scott McIntyre, St. Lucie County Attorney, Fort Pierce, Florida,

for Amici Curiae The Florida Association of Counties, The Florida League of Cities, Inc., Leon County, Florida, and St. Lucie County, Florida