# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D17-2224
_____

RUBEN RODRIGUEZ,

    Appellant,

    v.

TALLAHASSEE FIRE
DEPARTMENT/CITY OF
TALLAHASSEE,

    Appellees.

_____

An appeal from an order of the Judge of Compensation Claims.
John J. Lazzara, Judge.

Date of accident:  June 20, 2014.

March 15, 2018

OSTERHAUS, J.

In this workers' compensation case, Ruben Rodriguez appeals the Judge of Compensation Claims' (JCC's) order denying his claim seeking payment of impairment benefits for work-related cardiac arrhythmias. In determining that Mr. Rodriguez is not entitled to impairment benefits, the JCC rejected the expert medical advisor's (EMA's) opinion that Mr. Rodriguez has a permanent impairment rating (PIR) of at least 15%, as provided in the Class 2 classification of arrhythmias under the 1996 Florida Uniform Permanent Impairment Rating Schedule (Guide). We

reverse because the JCC did not articulate clear and convincing evidence sufficient to reject the EMA's opinion that Mr. Rodriguez requires drugs to prevent arrhythmia-related symptoms.

## I.

Mr. Rodriguez was a firefighter who developed cardiac arrhythmias, which were accepted as compensable by his Employer/Carrier (E/C) under section 112.18, Florida Statutes (2013) (providing rebuttable presumption of occupational causation for certain conditions, including heart disease, for certain professions such as firefighting). The accepted date of accident for this claim is June 20, 2014, which is when Mr. Rodriguez underwent an authorized cardiac ablation procedure for his arrhythmias. In the ablation procedure, freezing energy was used to scar Mr. Rodriguez's heart in order to electrically block the abnormal rhythm.

Dr. Cox, the authorized treating cardiologist/ electrophysiologist, placed Mr. Rodriguez at maximum medical improvement (MMI) on October 28, 2014, with a 0% PIR under Class 1 of the Guide. She prescribed a daily dose of 81 milligrams of over-the-counter aspirin for Mr. Rodriguez's condition. During her deposition, Dr. Cox indicated that Mr. Rodriguez has not had a recurrence of symptoms since MMI. Dr. Borzak, Mr. Rodriguez's independent medical examiner (IME), disagreed with Dr. Cox and opined that Mr. Rodriguez was entitled to a 16% PIR under the Class 2 category because an ablation procedure is analogous to having a pacemaker.

To resolve the doctors' disagreement about the impairment rating, the JCC appointed Dr. Castello as EMA. *See* § 440.13(9)(c), Fla. Stat. (2013). After Dr. Castello's evaluation, he rated Mr. Rodriguez within Class 2, with a PIR of 15% or 16%. The JCC rejected Dr. Castello's opinion, accepted the 0% PIR assigned by Dr. Cox, and denied payment of permanent impairment benefits.

## II.

When there is a disagreement in the medical opinions in a workers' compensation case, § 440.13(9)(c) mandates the appointment of an EMA whose opinion "is presumed to be correct

2

unless there is clear and convincing evidence to the contrary as determined by the [JCC]." *See also Taylor v. TGI Friday's, Inc.*, 108 So. 3d 698, 698 (Fla 1st DCA 2013) ("An EMA's opinion . . . is presumed to be correct unless the JCC finds and articulates clear and convincing evidence to the contrary."); *Arnau v. Winn-Dixie Stores, Inc.*, 76 So. 3d 1117, 1118 (Fla. 1st DCA 2011) (remanding for JCC to identify and "articulate" clear and convincing evidence to support his rejection of EMA's opinion). Here, we review whether there is competent substantial evidence (CSE) supporting the JCC's conclusion that clear and convincing evidence contravened the EMA's opinion. *See McKesson Drug Co. v. Williams*, 706 So. 2d 352, 353 (Fla. 1st DCA 1998) (holding that appellate review of JCC's rejection of EMA opinion is limited to whether CSE supports JCC's finding of clear and convincing evidence).

### A.

This case involves a dispute about the PIR assigned to Mr. Rodriguez after an ablation procedure improved his cardiac arrhythmia condition. By law, the amount payable in impairment benefits is determined by the PIR assigned to an injury or condition using the Guide. *See* § 440.15(3)(b)-(c), Fla. Stat. (2013); Fla. Admin. Code R. 69L-7.604. Under the Guide's impairment classification category for cardiac arrhythmias, either Class 1 or Class 2 applies in cases like this one, where a patient with documented cardiac arrhythmia is asymptomatic during ordinary daily activities. The least impaired patients fall into Class 1, and may be assigned a PIR from 0% to 14%. Class 2 covers the next PIR range (from 15% to 29% impairment) and applies to patients requiring "[m]oderate dietary adjustment, or the use of drugs, or an artificial pacemaker . . . to prevent symptoms related to the cardiac arrhythmia." Guide at 82. Or, if a patient requires none of these things, then the arrhythmia must persist and there must be organic heart disease to satisfy a Class 2 rating. *Id.*

### B.

In this case, after a disagreement between health care providers regarding Mr. Rodriguez's PIR—whether it was Class 1 or Class 2—an EMA appointed by the JCC concluded it to be Class 2, with a PIR of 15% or 16%. But the JCC rejected the EMA's

opinion of a Class 2 PIR, because it disagreed that an ablation and artificial pacemaker are the same thing, and it disagreed that aspirin is a drug. Mr. Rodriguez finds fault with both of these conclusions by the JCC and asks us to reverse and remand for an impairment rating determination based on the EMA's opinion.

1.    We disagree with the first of Mr. Rodriguez's two arguments, which challenges the JCC's rejection of the EMA's interpretation of "artificial pacemaker" as used in the Guide. The EMA's opinion considered an ablation procedure and artificial pacemaker equivalent for purposes of assigning a Class 2 impairment rating of 15-16%. *See* Guide at 82. The JCC rejected this finding because the evidence showed that Mr. Rodriguez has no artificial pacemaker and because a pacemaker and ablation are different. The JCC found that "a pacemaker is an implantable device that controls the heart rate, while an ablation is an invasive procedure performed to abate cardiac arrhythmia."

The JCC's decision is supported by the record. Both the EMA and Mr. Rodriguez's cardiologist acknowledged that cardiac ablations and artificial pacemakers are different things. An artificial pacemaker is a medical device implanted into an individual's chest to regulate the heart's rhythm. Conversely, an ablation uses freezing to scar the heart into blocking abnormal rhythms. The former treatment method relies on an artificial device going forward to correct cardiac rhythm issues; the latter is a single-event medical procedure. The EMA's testimony acknowledged that his views in assigning the PIR incorporated a "spirit of the guidelines" view versus adhering to the Guide's "letter of the word." It is true that the Guide grants some leeway to physicians to rate impairment based on analogies, where "a category applicable to the impairing condition cannot be found in the Guide." Guide at 2. But in this case, the Guide addresses Mr. Rodriguez's impairing condition. Cardiac arrhythmia is expressly included in the Guide. Guide at 82. What is more, the Guide provides an impairment classification that addresses patients who, at the point of MMI, have a documented arrhythmia, are asymptomatic, and have no evidence of heart disease (as well as don't require moderate dietary adjustment, the use of drugs, or an artificial pacemaker prevent symptoms); it provides for the assignment of a Class 1, 0-14% PIR. As Class 1 fit the facts of Mr.

Rodriguez's situation—having had an ablation, but no artificial pacemaker (and putting the aspirin-drug issue aside for the moment (see below))—we find no fault with the JCC's conclusion to reject the EMA's decision to give a Class 2 PIR based on his "having" an artificial pacemaker.[*]

2.    However, we agree with Mr. Rodriguez's second argument and reverse because the JCC disregarded the Guide's Class 2 parameter regarding "the use of drugs." One way that the Guide explicitly separates a Class 1 rating from a Class 2 rating is that Class 2 patients require "the use of drugs" to prevent symptoms related to cardiac arrhythmia. The JCC here assigned a Class 1 rating after deciding, contrary to the EMA's testimony, that the aspirin prescribed by Mr. Rodriguez's cardiologist was not a "drug." To support this conclusion, the JCC misplaced reliance on the definition of "medicine" under paragraph 440.13(1)(*l*) ("[A] drug prescribed by an authorized health care provider [which] includes only generic drugs or single-source patented drugs . . . ."). This definition indicates that "medicine" is a subset of "drug" in that statute, but it doesn't address the definition of "drugs" used in the Guide. The Guide refers to the "use of drugs," not "medicine."

In fact, nothing indicates that the definition of "drugs" in the Guide departs from its usual definition, or that aspirin isn't a drug. *See, e.g.,* Drug, *Merriam–Webster Online Dictionary*, www.merriam-webster. com/dictionary/drug (last visited Feb. 1, 2018) (defining a "drug" as "a substance used as a medication or in the preparation of medication" and "a substance intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease"); *cf. Kirkland v. State*, 666 So. 2d 974, 976 (Fla. 1st DCA

---

[*] We note that the Guide provides for a Class 1 rating in other instances where the patient is doing well at MMI after a cardiac surgery. *See e.g.*, Valvular Heart Disease, Guide at 76 (including within Class 1, some patients who have recovered from valvular heart surgery); Congenital Heart Disease, Guide at 78 (including within Class 1, some patients who have recovered from corrective heart surgery); Pericardial Heart Disease, Guide at 81 (including within Class 1, some patients who have had the pericardium surgically removed).

1996) (striking a condition of probation prohibiting the possession of "any drugs" because it could be interpreted to prohibit aspirin); *In re Bayer Corp. Combination Aspirin Prods. Mktg. & Sales Practices Litig.*, 701 F. Supp. 2d 356, 362 (E.D.N.Y. 2010) (recognizing that "[a]spirin is an analgesic, one of a class of drugs that . . . may be sold over-the-counter subject to an FDA monograph, which specifies what claims a manufacturer can make about the drug"). The records of Mr. Rodriguez's doctor visits specified that his treatment plan included taking aspirin. And the EMA recognized aspirin to be commonly prescribed to control atrial fibrillation symptoms. The EMA testified that the arrhythmia of atrial fibrillation often returns and that because there is a significant risk for stroke with this arrhythmia, anticoagulants, such as aspirin, are typically prescribed after an ablation. With this evidence, and with nothing concrete supporting the JCC's decision to discount Mr. Rodriguez's use of a drug to prevent arrhythmia-related symptoms, the EMA's PIR should have prevailed.

## III.

Accordingly, we reverse the final order and remand for further proceedings in accordance with this opinion.

REVERSED and REMANDED.

LEWIS and BILBREY, JJ., concur.

_____

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

_____

Kimberly A. Hill of Kimberly A. Hill, P.L., Fort Lauderdale, for Appellant.

Christopher J. DuBois and Mary E. Cruickshank of DuBois & Cruickshank, P.A., Tallahassee, for Appellees.

6