# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D2021-3530
_____

SEMINOLE COUNTY, FLORIDA and
JOHNS EASTERN COMPANY, INC.,

    Appellants,

    v.

CHAD BRADEN,

    Appellee.

_____


On appeal from the Office of the Judges of Compensation Claims.
Thomas W. Sculco, Judge.

Date of Accident: January 24, 2021.


December 13, 2023


M.K. THOMAS, J.

The Employer, Seminole County, and its Servicing Agent, Johns Eastern Company, Inc. (Seminole County), appeal a final order of the Judge of Compensation Claims (JCC), awarding workers' compensation benefits to Chad Braden, a firefighter. The issue is whether, after a concession by Seminole County that the "heart-lung statute"[1] and its presumption of work causation applied to Braden's heart attack and subsequent heart transplant

---

[1] § 112.18, Fla. Stat. (2021).

which occurred after his diagnosis of COVID-19, the JCC erred in finding that Seminole County failed to rebut the statutory presumption. Because competent, substantial evidence supports the JCC's determination, we affirm.

## I. Facts

Braden was hired by Seminole County as a firefighter in 1993 after a clean pre-employment physical. In the early 2000s, he suffered cardiac problems that Seminole County accepted as compensable. Braden received treatment, including an ablation of the heart. Thereafter, Dr. Pollack, an authorized cardiologist, treated Braden yearly, including a visit about ninety days before Barden's heart attack in 2021. At that appointment, Dr. Pollack reported that Braden was doing well and released him with no work restrictions.

On December 27, 2020, Braden tested positive for COVID-19. On January 24, 2021, less than a month later, he suffered a heart attack. Despite extensive medical treatment, Braden's medical condition continued to deteriorate, and he required an angioplasty to open a 100% occluded artery. He declined further, suffering a cardiogenic shock, acute congestive heart failure, and ventricular irritability. Later, he developed a blood clot in his leg, pulmonary emboli (blood clots in the lungs), and suffered an acute non-hemorrhagic occipital stroke (caused by a clot). A permanent defibrillator was placed in his heart. But he suffered blockages in his cardiac stents and repeat surgeries were required. In March 2021, he received a heart transplant.

Braden filed a Petition for Benefits seeking indemnity and medical benefits on grounds that his heart attack stemmed from "heart disease" and thus the statutory presumption of work causation under section 112.18 applied. He asserted a date of accident of January 24, 2021, the date of the heart attack. At first, Seminole County conditionally accepted the heart attack as compensable, filing a "120-day" letter under section 440.20(4), Florida Statutes, reserving its right to pay and investigate. However, on the 120th day, Seminole County denied compensability.

2

Prior to hearing, the parties completed the required Pre-Trial Stipulation. Braden sought compensability under section 112.18.[2] Seminole County asserted as a defense, among others, that the claim was denied in its entirety because "[c]riteria for the presumption was not satisfied and/or presumption rebutted." But at the merits hearing, it withdrew the defense and stipulated that section 112.18 applied and that Braden was entitled to the statutory presumption of work causation. Thus, the sole issue before the JCC was whether Seminole County successfully rebutted the presumption.

Braden argued that his claim was compensable, and the heart attack and related treatment and resulting disability were the natural progression of his preexisting, previously accepted as compensable, heart-lung statute claim.[3] He denied that the cause of his medical condition was COVID-19.

Seminole County responded that the evidence was sufficient to rebut the statutory presumption of work causation because Braden's heart attack and decline were caused by COVID-19, which he contracted outside of work. In response to the defense, Braden offered an alternative argument that if the JCC found the cause of his impairment and resulting disability to be the virus, that he contracted COVID-19 at work.

At the hearing, Braden testified that he woke up on December 27, 2020, not feeling well. He took a COVID-19 test because he had worked with two or three co-workers who had recently tested

[2] Braden did not assert entitlement to benefits under exposure, repetitive trauma, or occupational disease, among other statutory bases to support compensability of his condition. *See* §§ 440.02(1), 440.09, 440.151, Fla. Stat.

[3] Yet Braden did not assert the earlier date of accident from the early 2000s, even though he had continued to receive workers' compensation benefits under that claim. At oral argument, Braden's counsel argued a new date of accident was required because section 112.18 requires that a firefighter's condition or impairment result in disability.

positive. He also tested positive. Braden assumed he contracted the virus from his co-workers because "those are the only people I know that have tested positive for COVID, that I've been around."

Evidence presented at the hearing established that one co-worker was out of work starting on December 18, 2020, due to COVID-19; another worked with Braden on December 22, 2020, and tested positive on December 24, 2020; a third worked with him on December 22, 2020, and tested positive five days later. In the ten days before Braden's positive COVID-19 test, he worked two 24-hour shifts—one on December 22, 2020, and another on December 25, 2020.

While not at work in the days just before his positive test, Braden engaged in normal activities, including going to the gas station, eating inside restaurants, and going to the grocery store. Outside of work, he encountered his girlfriend, his daughter, his son, and possibly his daughter's roommate. Braden's girlfriend lives with him and did not deviate from her normal routine in the weeks right before his COVID-19 diagnosis. But she never tested positive for the virus.

Braden's daughter testified that around the time of his positive COVID-19 diagnosis, she worked from home one or two days a week and at her office the rest of the week. She worked with about 40–50 people at her office, and that some had tested positive for COVID-19 at some point. She could not recall how many times she visited her father in the days leading up to his positive test but acknowledged that she had spent Christmas with Braden, her mother, and her brother. She denied ever testing positive for COVID-19.

Braden's son testified that he is in the military, stationed at Camp Lejeune in North Carolina, and had visited Braden for the holidays. He took a commercial flight from North Carolina to Orlando, Florida, with a layover in Charlotte. He initially stayed at Braden's house, but he could not recall what he did during the five or six days right before Braden's positive test. He never tested positive for COVID-19.

4

Fire Chief Drozd was deposed regarding what, if any, safety policies had been implemented to prevent the spread of COVID-19 among firefighters. He testified that a host of policies were in effect to address the issue, including requiring firefighters to wear masks and socially distance themselves while at work. Also, a spraying service was under contract to regularly decontaminate the station. Chief Drozd could not recall anyone being disciplined for violating COVID-19 protocols at work.

Cardiologist, Dr. Nocero, was authorized by Seminole County to provide treatment after Braden's heart attack. But Seminole County denied compensability of the claim before treatment began. Dr. Nocero reviewed Braden's medical history. When asked his opinion regarding what caused Braden's heart attack and heart transplant, Dr. Nocero testified that the COVID-19 infection was the cause. In support of his causation opinion, Dr. Nocero discussed current research into the relationship between COVID-19 and heart disease, Braden's lack of cardiac symptoms at the most recent cardiology appointment before contracting COVID-19, Braden's multiple clots at different locations in the body after contracting COVID-19, and the statistical unlikelihood of repeat clotting following angioplasty and stenting (which he stated was .6%). Dr. Nocero was asked if there was "any way for [him] to tell, as you sit here under oath today, where [Braden] contracted COVID-19," and he answered "[n]o."

Braden underwent an independent medical examination (IME), with Dr. Mathias, a cardiologist, who testified, "[i]t's impossible to tell" where Braden caught the virus. Dr. Mathias did not believe that Braden's heart attack or transplant had anything to do with his earlier diagnosis of COVID-19. He admitted that "I don't know one way or another, since there is no definitive test that can be used to clarify this . . . ."

Dr. Renae, an infectious disease specialist, also performed an IME. After considering certain facts, including how many hours Braden was at work versus not at work during the possible viral infection period, Dr. Renae testified:

I think given all the facts that you presented, just from a pure mathematical simple equation, even though it's

5

possible he could have acquired [COVID] at the station, it's more probable he acquired it elsewhere just from a pure, you know, time equation. We know COVID is everywhere, we know it's possible to essentially catch it anywhere, including a restaurant, a delivery to the home, a supermarket, a cleaner's, the gas station and all these places that if you just add up all the hours the probability is he caught it somewhere else. Other than the station.

Even so, Dr. Renae admitted, "it's impossible to say that he definitely didn't get it at work" and that he "[did not] think you can rule it out with 100% certainty," adding that COVID-19's incubation period is "as loose as it gets, they say two to 14 days."

In the final order, the JCC quoted Dr. Mathias's testimony that it was "impossible" to know where Braden contracted the virus and that Dr. Nocero "did not know" where Braden contracted the virus. He then rejected Dr. Renae's opinion "as inconsistent with the circumstantial evidence in the case and as not supported by persuasive reasoning," noting that even if the virus is everywhere, "it does not necessarily follow that the risk of contracting Covid-19 is the same everywhere."

The JCC emphasized that Braden had presented a "presumption only" claim, dictating the relevant standard for rebuttal. He recounted that Drs. Mathias and Nocero testified that they did not know where Braden contracted COVID-19, and Dr. Renae testified that it was unlikely he got it at work. The JCC found the testimony of Dr. Nocero logical, reasonable, consistent with the best available current research, consistent with the medical opinions of other medical experts that treated Braden, and consistent with common sense. To the extent the experts disagreed on causation, the JCC accepted the opinions of Dr. Nocero and rejected the contrary opinions of Dr. Mathias, finding his reasoning to be less persuasive. The JCC noted that while Dr. Mathias acknowledged that there was less than 1% statistical likelihood of the complications Braden suffered following his initial angioplasty and stenting, Dr. Mathias rejected COVID-19 as a likely explanation despite the well-known connections documented in current research and in other medical opinions offered in the case.

6

The JCC accepted Seminole County's argument that COVID-19 caused Braden's heart disease, heart attack, and heart transplant. But the JCC found that Seminole County failed to rebut the presumption of work causation by proving that Braden contracted the virus outside of work. The JCC regarded the timeline significant because medical testimony established a minimum two-day incubation period before someone who is infected can become ill and spread the virus, meaning that it was less likely for Braden to have infected his co-workers than it was for them to have infected him. Furthermore, all of Braden's close contacts never developed symptoms nor tested positive for COVID-19, making it less likely (though possible) that one of them was the source of his infection. The JCC was not persuaded by the masking and social distancing protocols in place at the fire station at the time Braden was infected where no evidence was presented as to the efficacy, if any, of these protocols in reducing the risk of contracting the virus. Consequently, the statutory presumption of compensability prevailed, and the JCC found Braden's claim compensable.

The JCC summarily denied Seminole County's motion for rehearing.

## II. Analysis

On appeal, Seminole County argues that the JCC reversibly erred in finding it failed to rebut the statutory presumption of work causation for Braden's alleged condition or impairment. Specifically, it asserts: first, that the JCC erred when it rejected unrefuted medical testimony because the JCC did not provide a reasonable explanation for doing so and instead substituted his own medical opinion for that of the infectious disease expert; and second, competent evidence does not support the JCC's conclusion that Seminole County failed to rebut the statutory presumption of work causation with prooff that the COVID-19 infection was nonwork-related. Additionally, Seminole County argues that section 112.18 creates an unconstitutional, irrebuttable presumption when COVID-19 causes heart disease in a first responder. We address each argument in turn.

7

## A. Presumption

To the extent an issue turns on resolution of the facts, the review standard is competent, substantial evidence; to the extent it involves an interpretation of law, the standard is de novo. *See Benniefield v. City of Lakeland*, 109 So. 3d 1288, 1290 (Fla. 1st DCA 2013).

Here, the parties did not raise nor litigate, even alternatively, other available causes of action which could support compensability under the Workers' Compensation Law such as occupational disease, repetitive trauma, aggravation of a pre-existing condition or hindrance to recovery, for example. *See* §§ 440.151, 440.09(1)(b), Fla. Stat.; *Gallagher Bassett Services-Orlando v. Mathis*, 990 So. 2d 1214 (Fla. 1st DCA 2008); *Festa v. Teleflex, Inc.*, 382 So. 2d 122 (Fla. 1st DCA 1980). Instead, the claim was brought exclusively under section 112.18 with a listed date of accident of January 24, 2021. Then, Seminole County conceded the statutory elements of section 112.18 were satisfied and the presumption of work causation applied to Braden's claims.

This is the third case reviewed by this Court in which a first responder claimed entitlement to benefits under section 112.18 after a *viral infection* resulted in a cardiac event. Notably, in all three, the employer/carrier/serving agent conceded that the "heart lung" statute applied and, thus, its presumption of work causation for the claimant's impairment or condition. Hence, the only question before the JCCs in each of these cases was whether that conceded presumption of work causation was rebutted with competent evidence.

In *Walters v. State, DOC, Division of Risk Management*, 100 So. 3d 1173, 1175 (Fla. 1st DCA 2012), the claimant suffered heart disease as a result of viral gastroenteritis. The parties stipulated to the factual predicate necessary to give rise to the statutory presumption of occupational causation. *Id.* Ultimately, the JCC denied compensability of the claim. *Id.* While acknowledging that the statutory presumption arose, the JCC ruled that the employer/carrier had rebutted the presumption with testimony that the claimant's heart disease was attributable to viral gastroenteritis, and that the claimant had not proven that the viral

8

gastroenteritis was an occupational disease in the manner contemplated by section 440.151, Florida Statutes. *Id.* This Court reversed the JCC's order, explaining as follows:

> If the presumption applies, the claimant is under no obligation to establish occupational causation redundantly by adducing evidence beyond what was necessary to give rise to the presumption in the first place. Specifically, there is no requirement to put on proof meeting the requirements of section 440.151, Florida Statutes (2009), (titled "Occupational diseases"), unless and until the section 112.18 presumption is rebutted. "[A] claimant's burden of proving major contributing cause (MCC) by medical evidence, is fully met where the presumption contained in section 112.18(1) is applied . . . ."

> . . . .

> The judge of compensation claims erroneously imported into this Heart and Lung Statute case the legal requirements claimants must meet to demonstrate entitlement to workers' compensation benefits for other "occupational diseases" as provided for in section 440.151, Florida Statutes (2009). Mr. Walters sought to establish, not an occupational disease, but a "condition or impairment of . . . any . . . correctional officer . . . caused by . . . heart disease . . . resulting in total or partial disability . . . presumed to have been accidental and to have been suffered in the line of duty." § 112.18(1), Fla. Stat. (2009). In shifting the burden to the claimant to prove that the offending virus was work-related, the judge of compensation claims failed to give proper effect to the section 112.18 presumption. The State never rebutted the presumption of an "an accident" in the line of duty, a presumption that arose in the present case on stipulated facts.

*Id.* at 1176.

9

Then in *Orange County and Alternative Service Concepts v. Wilder*, 107 So. 3d 480, 480 (Fla. 1st DCA 2013), the claimant requested compensability under section 112.18 of his heart condition which resulted from viral cardiomyopathy. The employer/carrier stipulated that the claimant met the prerequisites of proof for application of the presumption of occupational causation, "including that her viral cardiomyopathy constitutes 'heart disease' as that term is used in section 112.18." *Id.* Yet, the employer/carrier argued that the JCC erred when it failed to find that the employer/carrier had rebutted the presumption by showing that the *cause* of the cardiomyopathy was a virus. *Id.* at 480–81. In the order appealed, the JCC found that the employer/carrier failed to meet its burden of proving the claimant's employment was not the source of the virus. Citing *Walters*, this Court found that the JCC's determination that the employer/carrier failed to rebut the presumption was supported by competent, substantial evidence. *Id.* at 481.

To be clear, *Walters* and *Wilder* were decided in the specific context in which the cases were litigated. That is, in both cases, the employer/carriers conceded that the predicates for the application of the presumption of work causation under section 112.18 were satisfied despite the heart disease in those cases arising from a viral etiology. These concessions, in and of themselves, set the employer's rebuttal burden—to prove that the virus causing the claimants' heart conditions were contracted outside of work.[4] *See Walters,* 100 So. 3d at 1176 ("*If the presumption applies*, the claimant is under no obligation to establish occupational causation redundantly by adducing evidence beyond what was necessary to give rise to the presumption in the first place . . . . The State had the burden to prove he did not get the virus at work and failed to carry its

---

[4] Where the claimant presents no medical evidence supporting the presumption of work causation (called "presumption only"), the employer's burden in rebutting it is to prove with competent evidence "that the disease causing disability or death was caused by a specific, nonwork related event or exposure." *See Caldwell v. Div. of Ret., Fla. Dep't of Admin.*, 372 So. 2d 438, 441 (Fla. 1979).

burden."). Once the presumption is conceded, the claimant's occupational causation burden is satisfied.

Here, because Seminole County stipulated to the presumption—its rebuttal burden was cemented. As a "presumption only" claim, it was required to prove by competent evidence that the disease resulting in Braden's disability was caused by a nonwork related event or exposure. Without the concession by the Employer, Braden would have needed to prove entitlement to the presumption under section 112.18 with proof that his heart disease caused an impairment or condition resulting in disability. *See Holcombe v. City of Naples/Johns E. Co., Inc.*, 328 So. 3d 311, 314 (Fla. 1st DCA 2021) (employer challenged application of the statutory presumption where there was evidence of secondary hypertension in the claimant's preemployment physical); *Williams v. City of Orlando*, 89 So. 3d 302, 302–03 (Fla. 1st DCA 2012) (employer did not concede application of the presumption, arguing instead that essential hypertension did not fall under one of the conditions covered by section 112.18); *Bivens v. City of Lakeland*, 993 So. 2d 1100, 1103–04 (Fla. 1st DCA 2008) (holding "essential hypertension" is not the form of hypertension covered by the presumption of 112.18); *City of Miami v. Thomas*, 657 So. 2d 927, 928 (Fla. 1st DCA 1995) (this Court rejected the JCC's finding that the term "hypertension" as used in section 112.18, was meant to include "any kind of hypertension").

Section 112.18 covers any condition or impairment of health "*caused by tuberculosis, heart disease, or hypertension . . . .*" (Emphasis added.) In the absence of a stipulation by the employer, the question of whether a claimant's condition or impairment gives rise to the presumption of work causation under section 112.18 is determined by the plain language of the statute. Here, as in *Walters* and *Wilder*, in light of the similar concession by Seminole County on the application of the presumption, we do not reach whether an impairment or condition caused by a virus-caused heart disease can give rise to the statutory presumption of work causation under section 112.18.

Rather, we consider only whether Seminole County met its burden to overcome the statutory burden of work causation. Under these facts, we find competent evidence supports the JCC's

11

determination that Seminole County failed to rebut the statutory presumption.

## B. Constitutional Challenge

Constitutional challenges to statutes are pure questions of law subject to de novo review. *See Scott v. Williams*, 107 So. 3d 379, 384 (Fla. 2013) (citing *Crist v. Ervin*, 56 So. 3d 745, 747 (Fla. 2010)). For the first time on appeal, Seminole County raises an as-applied constitutional challenge.[5] It asserts that "in cases where COVID-19 causes heart disease in a first responder, section 112.18, Florida Statutes, creates an irrebuttable unconstitutional presumption." And this irrebuttable presumption wrongfully shifts the costs of the pandemic onto employers and insurance companies. We decline to address Seminole County's as-applied constitutional challenge. As discussed above, when Seminole County conceded the application of the statutory presumption of work causation for Braden's claims, it abandoned multiple defenses available under the Workers' Compensation Law. The employer cannot tie both arms behind its back and then be heard to complain that it has been left defenseless. *Cf. Rodriguez v. Tallahassee Fire Dep't/City of Tallahassee*, 240 So. 3d 788, 789 (Fla. 1st DCA 2018) (identifying section 112.18 as a rebuttable presumption); *City of Jacksonville v. Ratliff*, 217 So. 3d 183, 186 (Fla. 1st DCA 2017) (noting that section 112.18(1) "creates a rebuttable presumption of occupational causation"); *Martz v. Volusia Cnty. Fire Servs.*, 30 So. 3d 635, 636 (Fla. 1st DCA 2010)

---

[5] Under Florida Rule of Appellate Procedure 9.425 in cases not involving criminal or collateral criminal proceedings, when raising a constitutional challenge, the party appealing must file a notice of constitutional question and serve the notice and a copy of the petition or brief on the office of the attorney general (AG). Seminole County did not do so here, and this Court issued an order to show cause requiring satisfaction of the rule. The AG was given an opportunity to appear at oral argument and file briefs. The AG could not appear at oral argument given the short notice but filed argument via briefing. As a needed reminder, failure of a party to comply with the requirements of rule 9.425 causes unnecessary delay in the appeal and potential prejudice to the AG.

(noting that section 112.18(1) affords certain public employees a rebuttable presumption that a condition was suffered in the line of duty).

AFFIRMED.

ROWE, J., concurs in result only; OSTERHAUS, C.J., specially concurs with opinion.

––––––––––––––––––––––––––

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

––––––––––––––––––––––––––

Osterhaus, C.J., specially concurring.

I concur insofar as *Walters v. State*, 100 So. 3d 1173 (Fla. 1st DCA 2012) and *Orange County & Alternative Service Concepts v. Wilder*, 107 So. 3d 480 (Fla. 1st DCA 2013) control the outcome here. I also see little in Appellants' constitutional argument because Employer/Servicing Agents may reasonably disprove the presumption of occupational causation in cases like this one by showing that the claimant did not get the virus at work (or perhaps by disputing the application of the § 112.18(1) presumption in the first place).

––––––––––––––––––––––––––

Michael Broussard and Megan E. Oliva, Broussard, Cullen & Blastic, P.A., Orlando, for Appellants.

James Robert Spears, Law Office of James Spears, PLLC, Orlando, for Appellee.

13